## In re Velma BARBER.

### No. 13–97–270–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 11, 1997.

Jesus Villalobos, Jr., Javier Villalobos, Vollalobos & Villalobos, McAllen, for real party in interest.

Edward C. Mainz, Jr., Thornton, Summers, Biechlin, Dunham & Brown, San Antonio, for relator.

Before DORSEY, FEDERICO G. HINOJOSA, Jr. and YANEZ, JJ.

## OPINION

DORSEY, Justice.

Relator, Velma Barber, seeks writ of mandamus directing respondent, Hon. Edward Aparicio, Judge of the 92nd District Court of Hidalgo County, to vacate or withdraw his orders of February 3 and April 2, 1997. Those orders granted real party in interest Rosa Ramirez's motion to declare sanctions void and overruled relator's motion to reconsider. Barber also asks us to compel Judge Aparicio to grant her a new trial in the underlying lawsuit, or alternatively consider and rule on her motion to set aside the interlocutory default judgment in the underlying lawsuit. We deny the writ.

### Facts and Procedural History

The underlying lawsuit between Ramirez and Barber arose as the result of a two-vehicle automobile accident in which Ramirez was injured. That accident occurred on April 5, 1994, when Ramirez was a passenger in a car owned by Joe Ramirez and driven by Joe Ramirez, III, which collided with a vehicle operated by Barber.

The procedural history of this case is long. On April 4, 1996, Ramirez sued Barber and Joe Ramirez, III, for negligence and Joe Ramirez for negligently entrusting his vehicle to Joe Ramirez, III. The suit was filed in the 92nd District Court of Hidalgo County,

presided over by Judge Homer Salinas. Barber timely filed an answer on May 16, 1996, demanding a jury trial.

Notwithstanding Barber's timely-filed answer, the trial court entered default judgment against Barber in favor of Ramirez on May 30, 1996, for $300,000. The court also granted Ramirez's motion for severance on that date, severing the suit against Barber from the suits against Joe Ramirez and Joe Ramirez, III. The court's order granting severance was announced in open court, and later reduced to writing and signed with a rubber-stamp facsimile of Judge Salinas's signature.

On June 24, 1996, Barber filed a motion to set aside the default judgment, seeking a new trial and sanctions against Ramirez. This motion was recorded in the court's docket and set for hearing, but no hearing was held. This motion was therefore overruled by operation of law on August 13, 1996, seventy-five days after the judgment was entered.[1] On August 27, 1996, Barber filed an "Agreed Order Setting Aside Default Judgment and Granting New Trial," signed by both parties. However, this order was not recorded in the court's docket or entered in the minutes of the court and the order in the official court file remains unsigned by the trial judge. This agreed order, which was filed within the trial court's 105-day period of plenary power,[2] is at the heart of the present controversy.

In the fall of 1996, the parties continued with discovery in the case. Ramirez amended her petition in November 1996. On November 4, 1996, visiting Judge Norman Lanford heard Barber's motion to compel Ramirez to answer her requests for discovery and motion for sanctions against Ramirez. Judge Lanford sanctioned Ramirez $175 for failing to respond to discovery, and ordered Ramirez to respond to Barber's requests for discovery. However, in December 1996 Ramirez sought a protective order to prevent Barber from taking her deposition, claiming the trial court had never signed an order granting a new trial,

---

1. Tex.R. Civ. P. 329b(c).

2. *See* Tex.R. Civ. P. 329b(e).

and asserting the trial court lost plenary power over the case on September 12, 1996, thirty days after Barber's motion for new trial was overruled by operation of law.[3] Ramirez argued that although an agreed order, signed by both parties, had been filed by Barber, the order in the official court file did not have Judge Salinas's signature on it and was therefore of no effect.

At the hearing on the motion for protective order, Barber's attorney produced a copy of the agreed order which bore the rubber-stamped signature of Judge Salinas.[4] The attorney represented to the court she had obtained the rubber-stamp signature on the order from Judge Salinas's court coordinator, Rose Salinas. The presiding judge determined there were too many documents missing from the court's file to make a proper ruling on the motion, and reset the hearing for January 1997. However, it does not appear from the record that this particular hearing was ever re-convened, or that the motion for protective order was ever ruled upon.

In January 1997, Ramirez filed a "Motion to Declare Sanctions Void and Motion for Protective Order," seeking to nullify the $175 sanction imposed by Judge Lanford and again seeking to prohibit Barber from taking Ramirez's deposition. In this motion, Ramirez again argued the trial court lost plenary power over the case on September 12, 1996.

Judge Salinas's court coordinator, Rose Salinas, made three separate affidavits regarding her actions in placing Judge Salinas's rubber-stamped signature on the agreed order. Her first affidavit states she presented the agreed order to Judge Salinas on September 3, 1996, and placed the judge's rubber-stamped signature on the order at his instruction. The affidavit also indicates she forwarded the signed order to the clerk for entry. The second affidavit indicates she presented the agreed order to Judge Salinas "either to him personally or by telephone communication," although she could not re-

call the exact date she had done so. The court coordinator also testifies in her second affidavit she later placed Judge Salinas's rubber-stamped signature on a copy of the agreed order held by Barber's attorney, although Judge Salinas was not present at the time. In her final affidavit, the court coordinator testifies specifically that she presented the agreed order to Judge Salinas on September 3, 1996, either in court or in his chambers, and placed his rubber-stamped signature on the order "[a]t [the judge's] instruction and in his presence." Attached to the court coordinator's third affidavit are copies of the court's docket sheet and an affidavit from the court reporter showing Judge Salinas was in court on September 3, 1996, presiding over court business.

After a hearing in January 1997 on Ramirez's motion to declare sanctions void, Judge Edward Aparicio ruled on February 3, 1997, that the trial court had indeed lost its plenary power and jurisdiction over the case on September 12, 1996, so the sanctions entered against Ramirez after that date were void. Barber filed a motion to reconsider this decision. After conducting a hearing on the motion to reconsider and reviewing the parties' briefs on the matter, Judge Aparicio denied the motion on April 2, 1997. Barber then filed the present mandamus proceeding.

### Analysis

◼ It is undisputed that the default judgment was improperly granted, a timely answer having been submitted by relator. Both parties approved and signed an agreed order granting a new trial which was timely submitted for the court's signature. The clerk's record shows both parties undertook actions evidencing their belief a new trial had, in fact, been granted. The issue is simply whether the trial court could have come to only one conclusion—that an agreed order granting the expected new trial had properly been issued. Considering the irregularities of the court record and fact questions before the trial court, we cannot con-

---

**3.** *See* Tex.R. Civ. P. 329b(e).

**4.** The hearing on the motion for protective order was presided over by Judge Fidencio Guerra, Jr.,

Judge Salinas having fallen ill and no longer presiding over the 92nd District Court.

clude Judge Aparicio abused his discretion in concluding proper procedures had not been followed and that no order granting a new trial had been issued within the period of the court's plenary jurisdiction.

 In order to find an abuse of discretion, the reviewing court must conclude the facts and circumstances of the case extinguish any discretion in the matter. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 918 (Tex.1985) (orig.proceeding). With respect to the resolution of factual issues or matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court unless the trial court could reasonably have reached only one conclusion and the trial court's decision is shown to be arbitrary and unreasonable. *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992) (orig.proceeding); *Lanfear v. Blackmon,* 827 S.W.2d 87, 90 (Tex.App.—Corpus Christi 1992, orig. proceeding [leave denied] ). To merit a writ of mandamus, Barber's burden is to establish the trial court could reasonably have reached only one decision. Given the facts in this case, Barber has not succeeded in this endeavor.

Judge Aparicio does not state the basis for his determination that the 92nd District Court's plenary power expired on Sept. 12, 1996, other than to point out that, as of April 2, 1997, the agreed order on file with the court remained unsigned. Both parties focus their briefs on the issue of the validity of a rubber-stamp signature. We note, however, an equally relevant question arises regarding the failure of the court to enter its order in its minutes. Each of these issues involves fact questions to be determined by the court.

 In the present case, Barber has presented evidence the order was indeed signed by Judge Salinas. The fact that the signature was a rubber-stamp facsimile of Judge Salinas's signature rather than his own handwriting is not, alone, dispositive. Texas law recognizes the effectiveness of facsimile signatures, so long as they are placed on the document by the signer himself or at his direction. *See* Op. Tex. Att'y Gen. No. JM–373 (1985). The use of facsimile signatures is widespread and recognized by law. *See, e.g.,* Texas Uniform Facsimile Signature of Public

Officials Act, Tex.Rev.Civ. Stat. Ann. art. 717j–1 (Vernon Supp.1997).

Judge Aparicio was faced with a number of troubling inconsistencies, and our decision turns on this fact. First, no signed copy of the order appeared in the record. Second, record of the court's signing the order was not made in the court's minutes. Third, the sole "signed" copy was produced from relator's files very late in the proceedings. Fourth, the Court Administrator signed contradictory and inconsistent affidavits regarding her application of Judge Salinas's signature stamp to the order she gave relator. The trial court was therefore confronted with a number of factual determinations in making its ruling. We are not free to substitute our judgment for that of the trial court unless the trial court could reasonably have reached only one conclusion.

Without full analysis, we also note case law is contradictory as to the effectiveness of an order not properly entered into a court's minutes. *See Sigler v. Realty Bond & Mortgage Co.,* 135 Tex. 76, 138 S.W.2d 537, 540 (1940) (a judgment must be entered of record to be effective); *Ex Parte Rains,* 113 Tex. 428, 257 S.W. 217, 220 (1923); *Rust v. State,* 31 Tex.Crim. 75, 19 S.W. 763 (Tex.Ct.App. 1892); *State Farm Ins. Co. v. Pults,* 850 S.W.2d 691, 692–93 (Tex.App.—Corpus Christi 1993, no writ), and cases interpreting Texas Rule of Civil Procedure 329b, including *Taack v. McFall,* 661 S.W.2d 923 (Tex. 1983), and *Clark & Co. v. Giles,* 639 S.W.2d 449 (Tex.1982). *But see Dunn v. Dunn,* 439 S.W.2d 830, 833 (Tex.1969) (signed, written judgment is not a prerequisite to finality; entry of judgment is only a ministerial act); *Hannon v. Henson,* 15 S.W.2d 579(Tex.Com.App.1929) (where order has been signed, but not entered, the court has jurisdiction to correct its record); *Coleman v. Zapp,* 105 Tex. 491, 151 S.W. 1040 (1912) (an order properly made but not entered may be entered by a nunc pro tunc entry); *Burnett v. State,* 14 Tex. 455, 456 (1855) (court has continuing power over its records and unquestioned authority to make them speak the truth); *UMC, Inc. v. Arthur Bros., Inc.,* 626 S.W.2d 819, 820 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.) (an order is

effective from rendition; entry is only a ministerial act).

Our review of the record leads us to conclude that, though relator has presented a plausible explanation of the chain of events, the trial court was not, as a matter of law, compelled to conclude Judge Salinas's signature had properly attached to the order. We decline to find Judge Aparicio abused his discretion in vacating the sanctions imposed by Judge Lanford and in denying relator's motion to reconsider. Writ DENIED.