In re Velma BARBER, Relator.

No. 98–0090.

Supreme Court of Texas.

Nov. 12, 1998.

Rehearing Overruled Feb. 4, 1999.

Sharon E. Callaway, Wallace B. Jefferson, San Antonio, Joseph Segrato, Vada L. Seward–Staha, McAllen, Edward C. Mainz, Jr., San Antonio, Lynn E. Coleman, McAllen, Thomas H. Crofts, Jr., San Antonio, for Relator.

Joe Ramirez, III, Joe Ramirez, Donna, Javier Villalobos, Jesus M. Villalobos, Justino Garza, Fidel Luis Pena, McAllen, for Respondent.

PHILLIPS, Chief Justice, delivered the opinion of the Court, in which GONZALEZ, HECHT, ENOCH, OWEN, ABBOTT and HANKINSON, Justices, join.

In the suit underlying this mandamus action, the trial court erroneously rendered a default judgment against the defendant, who in fact had timely answered. We must decide whether the trial court abused its discretion in determining that its plenary jurisdiction expired on September 12, 1996, because the parties' proposed agreed order to set aside the default judgment and grant a new trial was never signed. We hold that the agreed order was signed as a matter of law, and that the trial court abused its discretion in finding otherwise. Because relator has no adequate remedy by appeal, we conditionally grant mandamus relief.

On April 5, 1994, Rosa Ramirez ("Ramirez"), the plaintiff and real party in interest, was a passenger in a car owned by Joe Ramirez and driven by Joe Ramirez, III. The car collided with a car driven by Velma Barber, the relator here. Rosa Ramirez sued Joe Ramirez, III and Barber for negligence and Joe Ramirez for negligent entrustment in the 92nd District Court of Hidalgo County. Barber timely answered and requested a jury trial. A copy of her answer was sent to and received by both the trial court and Ramirez's counsel, Javier Villalobos. Despite receiving Barber's answer, Ramirez's counsel moved for a default judgment. The district clerk's office was behind on its filing. As a result, Barber's answer did not appear in the case file and the court rendered a default judgment against Barber on May 30, 1996, awarding Ramirez $300,000. Barber was not given notice of the default hearing. The trial court also severed Ramirez's claims against Barber from her remaining claims.

Barber timely moved to set aside the default judgment and for a new trial on June 24, 1996. A hearing on the motion for new trial was set for September 5, 1996, before the presiding judge, the Honorable Homer Salinas. On August 27, 1996, the parties filed a proposed agreed order setting aside the default judgment and granting a new trial. According to Rosie Salinas, the court coordinator, she stamped Judge Salinas's signature on the proposed order on September 3, 1996. Judge Salinas suffered a heart attack sometime in September 1996. At a hearing on November 4, 1996, Judge Norman Lanford imposed sanctions in the amount of $175.00 against Ramirez for discovery abuses. On November 13, 1996, Ramirez filed an amended petition against the original three defendants. In December 1996, Ramirez moved for a protective order and to quash a deposition notice, asserting that the default judgment erroneously granted on May 30, 1996, was final because the proposed agreed order for a new trial was never signed by the judge. The hearing on the protective order, held December 13, 1996, was presided over by Honorable Fidencio Guerra, Jr. At the hearing on the motion for protective order, Barber's attorney produced a copy of the agreed order bearing the rubber-stamped signature of Judge Salinas that she had obtained from the Judge's court coordinator. However, the copy of the agreed order in the court's file was unsigned. Judge Guerra determined that there were too many documents missing from the court's file to make a proper ruling, and rescheduled the hearing for January 1997. The record does not indicate that the hearing was ever reconvened or the motion ruled upon.

Ramirez subsequently moved to have the sanctions order declared void because the trial court's plenary jurisdiction expired before it was rendered. Ramirez contended that the motion for new trial was overruled by operation of law on August 13, 1996, because the original order setting aside the default judgment was still unsigned in the court file as of that date. Consequently, the trial court lost plenary jurisdiction on September 12, 1996, and the time for appeal had passed. The Honorable Edward Aparacio heard Ramirez's motion on January 28, 1997, and by order dated February 3, 1997, declared the sanctions order void because the court's plenary jurisdiction expired on Sep-

tember 12, 1996. Barber's motion to reconsider was overruled by order dated April 2, 1997.

The record contains three affidavits from Rosie Salinas, Judge Salinas's court coordinator, stating that she placed Judge Salinas's rubber-stamped signature on the agreed order at his direction. Her affidavits differ on whether the judge directed the placement of his rubber-stamped signature on the agreed order in person or over the telephone. Rosie Salinas's first affidavit states that the agreed order was presented by her personally to Judge Salinas, and that at his instruction she affixed his stamped signature to the order on September 3, 1996, and forwarded the stamped order to the court clerk for entry of the judgment. Her second affidavit states that, although she cannot recollect the exact date, the order was presented by her to Judge Salinas either in person or by telephone. Also in her second affidavit, Rosie Salinas states that Judge Salinas was not present when she stamped his signature on the copy of the agreed order presented to her by Barber's attorney, and she "proceeded to stamp file it for her [Barber's attorney] as the Honorable Judge Salinas had previously instructed me that I could stamp file his signature on motions and orders such as this." Rosie Salinas's third affidavit states that, upon review of the docket sheet which reflects that Judge Salinas was in chambers presiding over court business on September 3, 1996, she can now state that she "presented the Agreed Order for execution by [the] Judge, who while in the courtroom on the bench or in chambers, instructed me to place his stamped signature thereto, which I did in his presence in the courtroom or chambers, on September 3, 1996." Attached to her third affidavit is a verified copy of the court's docket sheet and an affidavit from the court reporter showing that Judge Salinas was at the court on September 3, 1996, presiding over court business. After unsuccessfully seeking mandamus relief from the court of appeals, 960 S.W.2d 310, Barber petitioned this Court for writ of mandamus to compel the trial court to vacate its orders of Febru-

ary 3, 1997, and April 2, 1997, which ruled that the trial court's plenary jurisdiction expired on September 12, 1996.

■ "Mandamus will issue to correct a clear abuse of discretion when there is no adequate remedy by appeal." *Mitchell Energy Corp. v. Ashworth,* 943 S.W.2d 436, 437 (Tex.1997). A trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision. *See Griffin Indus. v. Thirteenth Court of Appeals,* 934 S.W.2d 349, 355 (Tex. 1996). A trial court does, however, abuse its discretion when its decision is contrary to the only permissible view of the evidence. *See Walker v. Packer,* 827 S.W.2d 833, 840 (Tex. 1992).

■ A trial court can grant a motion for new trial only by "written order signed." Tex.R. Civ. P. 329b(c). However, the rules do not provide any direction as to the method of signing. In the absence of a statute or rule prescribing the method of signing, other courts have held that a signature may be affixed in different ways, including by facsimile stamp.[1] *See, e.g., Paulus v. State,* 633 S.W.2d 827, 849 (Tex.Crim.App.1981) ("The use of a stamp producing a facsimile of an original signature in signing legal documents has been upheld by this court."); *see also, e.g., State v. Obrigewitch,* 356 N.W.2d 105, 108 (N.D.1984); *Ferguson v. Stilwill,* 224 N.W.2d 11, 13 (Iowa 1974); *Blackburn v. City of Paducah,* 441 S.W.2d 395, 397 (Ky. 1969); *Oklahoma ex rel. Indep. Sch. Dist. No. 1 of Tulsa County v. Williamson,* 352 P.2d 394, 395 (Okla.1960). A signature may legally be made not only by the signer personally, but by and through someone duly authorized by the signer. *See, e.g., Stork v. State,* 114 Tex.Crim. 398, 23 S.W.2d 733, 735 (Tex.Crim.App.1929); *see also* Op. Tex. Att'y Gen. No. JM-373 (1985) (relying on *Stork,* holding that the clerk of county or district courts can affix the judge's signature stamp to judgments and orders in criminal cases). *Stork* holds that the signature of a magistrate made by use of a rubber stamp is as

---

1. The definition of the term "sign" in Black's Law Dictionary includes, "[t]o attach a name or cause it to be attached to a writing by any of the known methods of impressing a name on paper." Black's Law Dictionary 1381 (6th ed.1990).

valid as a signature written longhand, "provided that in each such case the facts must show the name to have been affixed by the officer himself, or under his immediate authority and direction and in his presence." 23 S.W.2d at 735; *see also* 80 C.J.S. *Signatures* § 6 (1953). Most recent Texas cases addressing the validity of facsimile signatures do not discuss whether the signature in the particular case meets with any particular requirements; they simply state that the use of a rubber stamp is acceptable and dismiss any complaint to a document on that ground. *See, e.g., Kemp v. State,* 861 S.W.2d 44, 47 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd); *Benavides v. State,* 763 S.W.2d 587, 590 (Tex.App.—Corpus Christi 1988, pet. ref'd).

■ While the court coordinator was under the judge's immediate authority and the affidavits are conclusive that she affixed the judge's facsimile signature at his direction, it is not clear that she did so in his presence. It may be unrealistic, however, to require the judge's actual physical presence at the time the signature is affixed in every case. A district court generally has no jurisdiction to conduct proceedings or render judgments and issue orders outside the county in which the lawsuit is pending. TEX. CONST. art. V, § 7; *Howell v. Mauzy,* 899 S.W.2d 690, 699 (Tex.App.—Austin 1994, writ denied). Many actions of the trial court must be made within strict time deadlines. There may be times when a judge is unable to be physically present at the courthouse, or it is necessary to sign a document that is not located in the county where the judge is, either because the judge has exchanged benches, TEX. CONST. art. V, § 11, is sitting elsewhere by assignment, TEX. GOV'T CODE § 74.052, or is away from the courthouse for other reasons. Even in multicounty districts, where judges are permitted to hear and determine certain matters and sign judgments and orders connected with those matters in any county in their judicial district, TEX. GOV'T CODE § 24.017(b), the file may not be present where the judge is located. In such instances, a judge can direct the clerk or coordinator, who has physical possession of the case file, to affix the judge's signature to an order or judgment. A court coordinator affixing a judge's signature in this manner is a mere instrumentality by which the judge exercises his or her own discretion and acts for him or herself. In most cases, requiring that the signature be affixed by someone under the judge's immediate authority and at the judge's direction should provide sufficient safeguards. Although many problems may be avoided when the judge personally signs all orders and judgments, we recognize that the use of a rubber stamp may in some circumstances be necessary. We therefore hold that a judge may sign a document by directing another person who is under the judge's immediate authority to affix the judge's signature using a rubber stamp.

■ Judge Salinas's rubber-stamped signature is acceptable in this case because the evidence is undisputed that the judge instructed Rosie Salinas, his court coordinator, to place his signature on the agreed order setting aside the default judgment and granting a new trial. In the absence of *conflicting* evidence, the affidavits of the court coordinator are conclusive on whether the judge approved the agreed order and directed the placement of his signature upon it. The trial court therefore abused its discretion in finding that the judge did not sign the agreed order on September 3, 1996.

■ Ramirez argues that, even if the stamped signature is valid, the order is not effective because it was not entered into the court's record during the period of plenary jurisdiction. For purposes of determining whether the order was timely, however, the date of signing (not the date of entry) controls. *See* TEX.R. CIV. P. 329b(c) ("In the event an original or amended motion for new trial or a motion to modify, correct or reform a judgment is not determined by written order *signed* within seventy-five days after the judgment was signed, it shall be considered overruled by operation of law on expiration of that period.") (emphasis added). *Cf.* TEX.R. CIV. P. 306a; *Board of Trustees of Bastrop Indep. Sch. Dist. v. Toungate,* 958 S.W.2d 365, 367 (Tex.1997) (date of signing of judgment—not date of entry—controls post-judgment deadlines).

Mandamus is not an appropriate means of reviewing a final default judgment rendered while the trial court had jurisdiction to do so. Instead, after the time for regular appeal has run, such a judgment may be attacked only by restricted appeal or equitable bill of review. *See Thursby v. Stovall*, 647 S.W.2d 953, 954 (Tex.1983). But this is not a typical situation where a party is challenging a final default judgment after the time for appeal has run. Barber obtained prompt notice of the default judgment and filed a timely motion for new trial. During its period of plenary jurisdiction, the trial court issued an order (effectively signed by rubber stamp) vacating the default judgment. Barber seeks mandamus review not of the default judgment but of the trial court's refusal to acknowledge the validity of its own order. Under these unique circumstances, because Barber has no other means of obtaining this specific review, mandamus relief is appropriate.

We therefore conditionally grant writ of mandamus. We direct the trial court to vacate its orders of February 3, 1997, and April 2, 1997. Mandamus will issue only should the trial court fail to comply.

BAKER, Justice, files a dissenting opinion, in which, SPECTOR, Justice, joins.

This case involves an original mandamus proceeding. Therefore, mandamus standards of review should apply. Admittedly, under the facts of this case, to deny mandamus relief to the relator leads to a harsh result at this time. But here the Court rewrites existing precedent by the Court of Criminal Appeals, ignores conflicting evidence in the record, and circumvents well-settled mandamus law to reach the result it desires. In my view, the record, existing precedent and mandamus standards lead to the conclusion that mandamus relief is inappropriate. Accordingly, I respectfully dissent.

### MANDAMUS STANDARDS OF REVIEW

Mandamus is an extraordinary remedy available only in limited circumstances. *See*

*Canadian Helicopters, Ltd. v. Wittig*, 876 S.W.2d 304, 305 (Tex.1994); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992). A court should issue mandamus only to correct a clear abuse of discretion or the violation of a legal duty when there is no other adequate remedy at law. *See Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 437 (Tex.1997); *Canadian Helicopters*, 876 S.W.2d at 305.

The test for abuse of discretion is not whether, in the reviewing court's opinion, the facts present a proper case for the trial court's action. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985). Rather, the question is whether the trial court acted without reference to any guiding rules or principles. *See Downer*, 701 S.W.2d at 241–42. To determine whether there is an abuse of discretion, we review the entire record. *See Griffin Indus., Inc. v. Thirteenth Court of Appeals*, 934 S.W.2d 349, 355 (Tex.1996). Our focus remains on the trial court's order regardless of the court of appeals' decision. *See Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 918 (Tex. 1985). The party challenging the trial court's decision must establish that the facts and law permit the trial court to make but one decision. *See Johnson*, 700 S.W.2d at 917.

With respect to resolving factual issues or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for the trial court's. *See Walker*, 827 S.W.2d at 839; *Flores v. Fourth Court of Appeals*, 777 S.W.2d 38, 41–42 (Tex. 1989). The reviewing court must defer to the trial court's resolution of factual matters and may not set aside the trial court's finding unless the record makes it clear that the trial court could reach only one decision. *See Walker*, 827 S.W.2d at 839–40. The reviewing court may not issue mandamus for an abuse of discretion merely because it disagrees with the trial court's decision if that decision was within the trial court's discretionary authority. *See Beaumont Bank N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). Moreover, an appellate court may not reconcile disputed factual matters in a mandamus proceeding. *See Hooks v. Fourth*

*Court of Appeals,* 808 S.W.2d 56, 60 (Tex. 1991). An abuse of discretion does not exist if the trial court bases its decision on conflicting evidence and some evidence reasonably supports the trial court's decision. *See IKB Indus. Ltd. v. Pro–Line Corp.,* 938 S.W.2d 440, 445 (Tex.1997); *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978).

## APPLICABLE LAW

A trial court can grant a motion for new trial only by a signed written order. *See* TEX.R. CIV. P. 329b(c). Our rules do not provide for a specific signing method. Our sister court, the Court of Criminal Appeals, has held that a signature may be affixed in different ways, including by a facsimile stamp. *See Paulus v. State,* 633 S.W.2d 827, 849–50 (Tex.Crim.App.1981). The signature may be made not only by the signer personally, but by someone the signer duly authorizes. *See Stork v. State,* 114 Tex.Crim. 398, 23 S.W.2d 733, 735 (Tex.Crim.App.1929). The officer's rubber stamp signature is as valid as a signature written longhand, provided that in each case, the facts must show that the officer himself affixed his name to the document, or the signature by written stamp was affixed under the officer's immediate authority and direction and in his presence. *See Stork,* 23 S.W.2d at 735.

## ANALYSIS

I disagree with the Court's writing in this case for two reasons. First, although acknowledging *Stork's* requirement that another person can affix the facsimile stamp under the judge's immediate authority, direction and *in his presence,* the Court writes out the "in his presence" requirement and holds that an order is validly signed merely when a judge directs another person under the judge's immediate authority to affix the judge's signature using a rubber stamp. Second, after having written out the "in his presence" requirement, the Court concludes that the evidence is undisputed that the court coordinator had the trial judge's authority to place a stamped signature on the order in question here. This conclusion permits the Court to conclude "as a matter of law" that the trial court abused its discretion in finding

that the agreed order was not properly signed.

The Court recognizes that after reviewing the entire record, "it is not clear that the signature was affixed in the trial court's presence." 982 S.W.2d at 367. Nevertheless, to circumvent *Stork,* the Court holds that it is unrealistic to require the judge's actual physical presence where another person affixes a facsimile signature. 982 S.W.2d at 367. The Court then offers a number of reasons why, in its view, it can dispense with requiring actual physical presence when the signature is affixed. Based on these reasons, the Court holds that requiring only the judge's immediate authority and direction provides sufficient safeguards. I disagree with the Court's conclusion. *Stork's* tripartite requirement of immediate authority, direction and presence serves salutary purposes. First, if *Stork* had been followed by the trial judge in this case, we would not have had this mandamus in the first place. Second, the tripartite requirement avoids the possibility of inadvertent stamping of orders, judgments, and other documents that may not in actuality have the trial judge's approval. Third, and most importantly, the tripartite requirement prevents others from signing orders that are actually contrary to the trial court's decision.

In addition, the Court improperly ignores the conflicting evidence in the record in concluding that the trial court abused its discretion in finding that the agreed order was not properly signed. The court of appeals' opinion articulates how unclear the record is on this issue:

Judge Aparicio was faced with a number of troubling inconsistencies, and our decision turns on this fact. First, no signed copy of the order appeared in the record. Second, record of the court's signing the order was not made in the court's minutes. Third, the sole "signed" copy was produced from the relator's files very late in the proceedings. Fourth, the Court Administrator signed contradictory and inconsistent affidavits regarding her application of Judge Salinas's signature stamp to the order she gave relator. The trial court was therefore confronted with a number of fac-

tual determinations in making its ruling. We are not free to substitute our judgment for that of the trial court unless the trial court could reasonably have reached only one conclusion.

*In Re Barber*, 960 S.W.2d 310, 313 (Tex. App.—Corpus Christi 1997, orig. proceeding). I conclude, as did the court of appeals, that the trial court was not, as a matter of law, compelled to find that Judge Salinas's signature had properly attached to the order. This Court, as well as the courts of appeals, must not substitute its judgment for the trial court's. *See Walker*, 827 S.W.2d at 839. More importantly, we may not reconcile disputed factual matters in a mandamus proceeding. *See Hooks*, 808 S.W.2d at 60. Here, the evidence conflicts. Because there is some evidence that reasonably supports the trial court's decision, there is no abuse of discretion. *See IKB Indus. Ltd.*, 938 S.W.2d at 445. It is not clear from this record that the trial court could have reached only one decision and accordingly, we may not set aside the trial court's finding. *See Walker*, 827 S.W.2d at 839–40.

## CONCLUSION

By changing existing precedent, ignoring evidentiary conflicts in the record, and failing to properly apply mandamus standards, the court inappropriately grants mandamus relief here. Because I think the court of appeals was correct in its disposition of the relator's mandamus, I dissent from the Court's decision today.