COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-262-CV

IN THE MATTER OF V.B. 

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

In one issue, Appellant V.B. complains that the trial court abused its discretion in modifying his disposition and committing him to the Texas Youth Commission (TYC).  Because we hold that the trial court did not abuse its discretion, we affirm the trial court’s modification judgment and commitment order.

PROCEDURAL HISTORY

On November 17, 2005, Appellant, a juvenile,
(footnote: 2) was adjudged to have engaged in delinquent conduct by committing the offense of assault on a public servant (a felony) and was placed on probation.  On July 12, 2006, the State filed a motion to modify Appellant’s disposition alleging that he had violated the terms and conditions of his probation by committing the offense of assault with bodily injury (a Class A misdemeanor) on March 5, 2006.  At the hearing on the State’s motion to modify, Appellant stipulated to evidence establishing that he violated the terms of his probation by assaulting a police officer.

The trial court’s judgment recites that Appellant violated the terms and conditions of his probation, that it is in Appellant’s best interest that his probation be revoked, and that Appellant’s best interest would be served by committing him to TYC for an indeterminate period of time not to exceed the date when he turns twenty-one years old.

THE COMPLAINED-OF FINDINGS 

In his sole point, Appellant contends the trial court abused its discretion by committing him to TYC because there is factually insufficient evidence to support the court’s commitment findings that reasonable efforts were made to prevent or eliminate Appellant’s removal from the home and to make it possible for him to return home; and that he cannot be provided the quality of care and level of support and supervision in his home that he needs to meet the conditions of probation.

Section 54.05 of the Juvenile Justice Code sets out procedures that must be followed by the trial court in a hearing to modify the disposition in a juvenile case.  
Tex. Fam. Code Ann.
 § 54.05 (Vernon Supp. 2006).  The portions relevant to Appellant’s issue on appeal provide:

(m)  If the court . . . commits the child to the Texas Youth Commission, the court:

(1)  shall include in the court’s order a determination that:

. . .   

(B)  reasonable efforts were made to prevent or eliminate the need for the child’s removal from the child’s home and to make it possible for the child to return home; and

(C) the child, in the child’s home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation. 

Id.  
The trial court’s commitment order made findings that complied with section 54.05(m)(1)(B) and (C).

STANDARD OF REVIEW

After a juvenile has been adjudicated delinquent, the court has broad discretion to determine disposition.  
In re C.J.H.
, 79 S.W.3d 698, 702 (Tex. App.—Fort Worth 2002, no pet.).  The trial court’s judgment and commitment order modifying Appellant’s disposition are reviewed under an abuse-of-discretion standard.  
In re J.P.
, 136 S.W.3d 629, 632 (Tex. 2004).  To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.  
Downer v. Aquamarine Operators, Inc.
, 701 S.W.2d 238, 241-42 (Tex. 1985), 
cert. denied
, 476 U.S. 1159 (1986).  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.  
Id
.

An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence.  
In re Barber
, 982 S.W.2d 364, 365 (Tex. 1998) (orig. proceeding).  Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court’s decision.  
Butnaru v. Ford Motor Co.
, 84 S.W.3d 198, 211 (Tex. 2002).  Whether there is factually sufficient evidence to support the trial court’s findings is a relevant consideration in determining if the trial court abused its discretion.  
See Beaumont Bank v. Buller
, 806 S.W.2d 223, 226 (Tex. 1991); 
Tex. Dep’t of Health v. Buckner
, 950 S.W.2d 216, 218 (Tex. App.—Fort Worth 1997, no writ).  An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered.  
Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965).  We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding.  
Mar. Overseas Corp. v. Ellis
, 971 S.W.2d 402, 406-07 (Tex.), 
cert. denied
, 525 U.S. 1017 (1998).

FACTUAL BACKGROUND

Appellant acknowledges that he was appearing before the trial court for the third time, having previously been adjudicated delinquent for criminal mischief, resisting arrest, and assault on a public servant.  He has been in foster care off and on since he was eight months old due to physical abuse by his mother.
(footnote: 3)  He has resided in a group foster home with Jesse Henry and his wife for several years with six or seven other foster children, including the Henrys’ baby.  Prior to his arrest for the instant offense, Appellant was attending an alternative school.

On March 5, 2006, Henry called the police requesting assistance because Henry was trying to subdue Appellant and keep him from hitting some of the other foster children in Henry’s care.  When Officer G.G. Hemstead arrived at the scene, she found a Chevy Suburban belonging to Henry parked on the side of the road.  The officer approached the vehicle and observed Henry lying on top of Appellant trying to restrain Appellant from fighting with the other foster children.  Officer Hemstead was wearing her Fort Worth Police Department uniform and badge and entered the vehicle to assist in the restraint.  The officer yelled at Appellant and told him to stop fighting.  Appellant looked at the officer and kicked her in her left temple region, causing pain and swelling.  Appellant subsequently pled guilty to a reduced charge of misdemeanor assault/bodily injury arising out of the incident.

During the disposition phase of the hearing, the court admitted without objection a social history report completed by Appellant’s juvenile probation officer, Wade Sinor.  In the report, Sinor explained that Appellant was appearing before the court for the third time and that the matter presently before the court involved Appellant’s fifth delinquent referral to the probation department. The report indicates that according to Appellant’s foster parents, “there have been rough times in the home due to [Appellant’s] non-compliance.”  After the incident involving Appellant’s assault of Officer Hemstead, Sinor visited Appellant at Henry’s home.  At that time, Appellant became verbally abusive toward Henry and Sinor, stating “F*** Mr. Sinor and F*** probation.” Sinor testified at the hearing that this was the third time Appellant had assaulted a peace officer.  Appellant has previously received weekly court-ordered counseling to deal with his anger issues.  In November 2005, Appellant was ordered to be assessed for possible placement in a more intensive type of probation therapy, but following Appellant’s assault of Officer Hemstead in March 2006, the juvenile probation department determined that more restrictive supervision was required.  Sinor opined that Appellant “probably needs more of a residential treatment center, something more restrictive rather than, I don’t think he’s getting what he needs in the foster care.  I don’t think Mr. Henry can supervise him and give him the attention he needs.  I think he needs something a little more restrictive.”  Sinor testified that Appellant had a part-time job in the evenings.  Appellant’s psychological assessment report indicates that Appellant has anger management problems or behavioral problems.  Appellant was verbally abusive at home and had some fights with the other foster children in the home.  Henry informed Sinor that Appellant had been going to weekly counseling through Child Protective Services (CPS), where he received his medication, Zoloft.  When asked by Appellant’s counsel whether he believed that if Appellant was given the opportunity to participate with the Family Partnership Program it would be appropriate for or benefit him, Sinor responded that Appellant probably needs something more restrictive than he was receiving in the foster home, more like a residential treatment center.  He stated that Resource Staffing recommended that Appellant be placed in a residential treatment center, and if that wasn’t available through CPS, then Resource Staffing’s recommendation was that Appellant be placed with TYC.

Appellant’s CPS caseworker Mr. Milton testified that it would be “very difficult” to find a residential treatment center for Appellant due to his age—at the time of the hearing Appellant was seventeen and a half years old—and the fact that this is his third assault and Appellant would likely have to travel to Tyler, Houston, or Austin and would be far away from his CPS caseworker.  Milton stated that “if there was a facility that I thought would do [Appellant] better justice, I would recommend it and try to place him there.  I’m just doubtful, though, with the third offense that they could.”

Appellant testified that the first couple of times that he was taken to the juvenile detention facility, he “really didn’t take things seriously,” but after he was taken to the Tarrant County jail he changed his attitude.  Since being released, he has been trying to go to church on Sunday and he said that he’s going to stay away from the group of people he hung around with that got him in all this trouble.

DISCUSSION

The record reflects that CPS and the juvenile probation department have provided Appellant with regular psychological counseling and supervised foster care, and despite those efforts Appellant assaulted a uniformed police officer in March 2006, causing bodily injury to the officer.  Appellant’s foster parents acknowledged that the situation in their home was made more difficult due to Appellant’s noncompliance.  Appellant’s juvenile probation officer testified that in his opinion Appellant requires a more restricted setting than can be provided in foster care.  After a comprehensive evaluation, Residential Staffing recommended that Appellant be placed in a residential treatment center, but if that was unavailable, then Appellant should be placed in TYC.  The CPS caseworker testified that placement in a residential treatment center would be very difficult due to Appellant’s age and history of repeated assaults.

The evidence establishes that reasonable efforts were made to prevent or eliminate the need for Appellant’s removal from the home and to make it possible for him to return home, and that he cannot be provided the quality of care and level of support and supervision in his home that he needs to meet the conditions of probation.  Considering all the evidence from the hearing, we hold that 
the evidence supporting the two complained-of findings is not so weak, and the evidence to the contrary is not so overwhelming, that the findings should be set aside.  Accordingly, we conclude that the trial court did not abuse its discretion in committing Appellant to TYC.  We overrule Appellant’s sole issue on appeal.

CONCLUSION

Having overruled Appellant’s sole issue, we affirm the trial court’s modification judgment and the commitment order. 

PER CURIAM

PANEL F:  HOLMAN, WALKER, and MCCOY, JJ

DELIVERED:
  January 11, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Appellant was born on January 6, 1989.

3:
His biological mother’s rights have previously been terminated.