

## NUMBER 13-08-00509-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI ‑ EDINBURG

### IN THE GUARDIANSHIP OF
### BOBBY ESTHER WALZEL, AN INCAPACITATED PERSON

### On appeal from County Court at Law No. 5
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Yañez and Benavides
### Memorandum Opinion by Justice Benavides

Allen Dean Walzel ("Allen"), appellant, appeals from the trial court's order appointing Sherry Ann Morrow ("Sherry"), appellee, as the guardian of the person and estate of Bobby Esther Walzel ("Bobby").[1]  On appeal, Allen asserts that the trial court abused its discretion by finding that Sherry was eligible to be Bobby's guardian and appointing her Bobby's guardian.  We affirm.

---

[1] Specifically, the trial court ordered that Sherry Morrow be appointed guardian of the person of Bobby Walzel and the guardian of the estate of Bobby Walzel for the "limited purpose of receiving and distributing funds from the [Trust Account] according to the terms of the Trust Account and for the limited purpose of assisting Bobby Ester [sic] Walzel with financial matters related to the [M]anagement [T]rust including the signing of tax returns."

## I. BACKGROUND

Bobby Walzel is an elderly woman with two children, Sherry Morrow and Allen Walzel. Until November 2006, she resided in Alice, Texas. On Thanksgiving Day, November 23, 2006, Terry Morrow ("Terry"), Sherry's husband, found Bobby in her house in Alice, alone, without electricity. Bobby had failed to pay her electricity bill and file her tax returns for several years. On November 24, 2006, after letting Bobby stay overnight in her own home in Alice, Sherry and Terry picked Bobby up and moved her into their house in Corpus Christi, Texas. On December 20, 2006, Bobby signed a statutory durable power of attorney appointing Sherry as her agent. *See* TEX. PROBATE CODE ANN. § 482 (Vernon 2003).

### A. Procedural History

On January 7, 2008, Allen filed his "Application for the Appointment of Permanent Guardian of the Person and Estate and Request for Injunctive Relief," wherein he sought to be appointed the guardian of Bobby's person and estate. That same day, the trial court granted Allen's requested temporary restraining order which, in part, prohibited Sherry from making withdrawals from any checking account in which Bobby had an interest and signing Bobby's name on any negotiable instrument. The trial court also appointed Mark Stolley to be Bobby's attorney ad litem.

On January 15, 2008, Sherry filed her "Original Answer to Request for Injunctive Relief, Contest to Allen D. Walzel's Application for Appointment of Permanent Guardian, and Sherry Ann Morrow's Application for Appointment of Permanent Guardian." Sherry sought to be appointed the guardian of Bobby's person and estate.

On March 24, 2008, the trial court created a section 867 "Management Trust." *See id.* § 867 (Vernon Supp. 2009). The trial court ordered Bobby's funds to be placed in the Management Trust. On April 16, 2008, the trial court appointed Sherry the temporary guardian of Bobby's person. *See id.* § 875(k) (Vernon Supp. 2009).

This matter proceeded to a bench trial on June 11-12, 2008, during which Sherry, Allen, and Stolley testified. All parties stipulated that the Management Trust should remain

in effect.

**B.    Trial Testimony and Evidence**

1.    *Sherry's Testimony*

Allen called Sherry as his first witness in his case-in-chief.  Sherry testified that after Bobby moved into Sherry's home in late November 2006, Sherry became a signor on Bobby's bank account at Texas Champion Bank ("Champion"), which was funded exclusively with Bobby's money from Social Security and retirement checks along with distributions from Bobby's investment account.  Sherry did not contribute any of her own funds to the Champion account.

On May 8, 2007, the balance of the Champion account was transferred to a new account opened at Frost Bank ("Frost").  The Frost account was a joint account in Bobby, Sherry, and Terry's names.  Sherry was a signor on the Frost account, which was also funded exclusively with Bobby's money, including money Sherry received from selling Bobby's car.

Sherry wrote myriad checks to "cash" out of both accounts.  Allen argues that Sherry "tendered no receipts for any expense paid with cash," but our review of the record revealed multiple receipts for cash transactions.  However, Sherry admitted that she could only provide receipts for approximately half of the transactions paid for with cash generated from these checks.  Sherry summarized that the cash was for Bobby's "spending money, beauty shop, pedicure, groceries, gasoline, utilities, cable, phone, eating out" and "taking care of Mom, and also our taking care of Mom's house."

Sherry said that $200 or $300 from each check written to cash out of the Champion account was for spending money, which she gave to Bobby to "carry around."  Once the funds in the Champion account were transferred to the Frost account, Sherry held on to the spending money, and "[w]hen [Bobby] wanted things, [Sherry] said, Mom, I have the money."  She would then buy Bobby whatever it was Bobby wanted.  The rest of the money Sherry received from checks she wrote to cash out of the Frost account went to expenses, including all of Sherry's household expenses during the time Bobby had been

3

living with her prior to the establishment of the Management Trust. She did not allocate these expenses between Bobby and herself.

Sherry used money from the Frost account to cover repairs to her and Terry's vehicles, for her own dental services, and for her own cell phone bills. Sherry used a debit card from the Frost account to pay for household supplies at Wal-Mart on several occasions, and she did not have receipts for any of the Wal-Mart expenses. The statements from the Frost account also indicated several deposits less cash of various amounts. Sherry testified that the cash was used for expenses, and she only had receipts for about half of those expenditures.

Sherry stated that in late 2006 or in January 2007, Bobby agreed to pay for Sherry's labor costs and to pay Sherry rent while Bobby was living in Sherry's home. Sherry also asserted that Bobby agreed to pay for all of the utilities, groceries, phone, and cable. Sherry testified that the agreement was oral and that she had not reduced the agreement to writing. Allen's counsel asked Sherry, "[Bobby] made this decision with you to pay whatever you wanted for whatever you wanted to pay it for? Is that basically what you are telling us?" Sherry replied, "Whatever I needed. [Bobby] said whatever I needed, just use her money."

2.    *Capacity Evidence*

Allen and Sherry both tendered physician's reports for the trial court's review. Sherry presented the report of Ernesto Guido, MD, a neurologist, who examined Bobby on four different occasions: January 18, 2007; March 19, 2007; July 17, 2007; and February 6, 2008. Following each visit, Dr. Guido noted that Bobby has dementia of the Alzheimer's type. During the January 18, 2007 visit, Dr. Guido determined that Bobby "has a history of progressive dementia for the last several years." Dr. Guido ordered Bobby to continue taking one medication previously prescribed by a different doctor and added an additional medication to her regimen.

Allen provided the report of Joel Kutnick, MD, a psychiatrist, who evaluated Bobby on February 12, 2008. Dr. Kutnick concurred with Dr. Guido's diagnosis that Bobby has

4

"Dementia of the Alzheimer's Type." Dr. Kutnick also noted that, as of February 12, 2008, he did not have enough information to determine when Bobby "became incompetent for legal affairs" but that there is "a possibility that [Bobby] did not fully understand" what she was doing when she signed the power of attorney in December 2006 and that there was "marked confusion around Thanksgiving 2006." On March 25, 2008, Dr. Kutnick filed an addendum to his evaluation. In the addendum, Dr. Kutnick noted that one of Allen's attorneys wanted to know whether Bobby was competent during November and December 2006. He "was supplied a number of names who are friends" of Bobby, and, after speaking with these individuals, Dr. Kutnick concluded that "it does appear around two or three years ago, Bobby Walzel became so confused that [he] doubt[s] she could really comprehend the meaning of a Power of Attorney," and that he did "not think she was competent to sign any legal document."

Sherry also offered the deposition of Gary Waldrop, the attorney who prepared the power of attorney on December 20, 2006. Waldrop said that he spent about an hour visiting with Bobby, Sherry, and Terry. He did not notice anything regarding Bobby's demeanor that caused him to believe Bobby was under duress or did not understand what she was doing when she signed the power of attorney. He discussed the various provisions in the power of attorney document and the powers it vested in Sherry. Bobby appeared to understand these provisions. Waldrop did not know that Bobby may have been suffering from Alzheimer's at that time, and "[i]t would have been important if [he] had known she was an Alzheimer's patient." Waldrop asserted, "[I]n my opinion, [Bobby] knew exactly what she was signing. She knew exactly what she was doing."

### 3. Attorney Ad Litem's Testimony

Mark Stolley, Bobby's attorney ad litem, stated that he believed both parties came to the court with unclean hands,[2] but that he knows Bobby's money is currently being

---

[2] There was significant testimony and evidence relating to a $15,000 dollar loan or gift Bobby gave to Allen and other dealings between Bobby and Allen which Sherry asserted amounted to a debt Allen owed Bobby. However, on appeal, Sherry does not challenge the trial court's finding that Allen is eligible to serve as Bobby's guardian; therefore, a review of Allen's eligibility is not pertinent to the resolution of Allen's appeal,

safeguarded by the Management Trust. Stolley noted that Bobby told him she wanted to continue living with Sherry because Sherry can provide around-the-clock care. He recommended to the trial court that it would be in Bobby's best interest to keep the Management Trust in place, that Bobby continue to live with Sherry, and that Sherry be appointed guardian of the person of Bobby Walzel.

## C.     Trial Court's Order

Having received all of this evidence and having heard the testimony of Allen, Sherry, and Stolley, the trial court declared Bobby to be totally incapacitated. The trial court also found that both Allen and Sherry were eligible to be Bobby's guardian and appointed Sherry guardian of the person and estate of Bobby Walzel. The trial court determined that Sherry was indebted to Bobby in the sum of $1,197.81 for Sherry's personal expenses paid for with Bobby's funds. The trial court ordered Sherry to pay $1,197.81 within five days after the signing of the order and that Letters of Guardianship be issued to Sherry upon the payment of the debt. Sherry paid the debt. On August 25, 2008, the trial court filed findings of fact and conclusions of law. *See id.* § 693 (Vernon Supp. 2009). This appeal ensued.

## II. STANDARD OF REVIEW

We review the appointment of a guardian for abuse of discretion. *Saldarriaga v. Saldarriaga*, 121 S.W.3d 493, 497 (Tex. App.–Austin 2003, no pet.) (citing *Trimble v. Tex. Dep't of Protective & Regulatory Svcs.*, 981 S.W.2d 211, 214 (Tex. App.–Houston [14th Dist.] 1998, no pet.)). The trial court abuses its discretion when it fails to follow guiding rules and principles or acts in an unreasonable or arbitrary manner. *Id.* "A trial court has no discretion in determining what the law is or applying the law to the facts." *Landreth v. Las Brisas Council of Co-Owners, Inc.*, 285 S.W.3d 492, 496 (Tex. App.–Corpus Christi 2009, no pet.).

A trial court does not abuse its discretion when it bases its decision on conflicting

and we need not address this evidence. TEX. R. APP. P. 47.1.

6

evidence, yet a factual decision is an abuse of discretion when there is no evidence to support it. *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998); *see also WCM Group, Inc. v. Brown*, No. 13-08-00305-CV, 2009 WL 3861010, at *6 (Tex. App.–Corpus Christi Nov. 19, 2009, no pet. h.). "A trial court does, however, abuse its discretion when its decision is contrary to the only permissible view of the evidence." *Barber*, 982 S.W.2d at 366 (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992)). "The trial court does not abuse its discretion if some evidence reasonably supports the trial court's decision." *In re Guardianship of Erickson*, 208 S.W.3d 737, 743-44 (Tex. App.–Texarkana 2006, no pet.) (citing *Furr's Supermarkets, Inc. v. Bethune*, 53 S.W.3d 375, 379 (Tex. 2001)).

Under the abuse of discretion standard, "[w]e do not conduct an independent review of findings of fact . . . under traditional legal and factual sufficiency standards." *In re Keller*, 233 S.W.3d 454, 459 (Tex. App.–Waco 2007, pet. denied). Instead, the legal and factual sufficiency of the evidence to support the trial court's findings of fact are factors to be considered but not independent grounds for reversal. *Trimble*, 981 S.W.2d at 215 (citing *IKB Indust. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 445 (Tex. 1997)).

### III. APPLICABLE LAW

Prior to appointing a guardian, the trial court must find by clear and convincing evidence that:

(1) the proposed ward is an incapacitated person;

(2) it is in the best interest of the proposed ward to have the court appoint a person as guardian of the proposed ward; and

(3) the rights of the proposed ward or the proposed ward's property will be protected by the appointment of a guardian.

TEX. PROBATE CODE ANN. § 684(a)(1)-(3) (Vernon 2003). Additionally, prior to appointment, the trial court must also find by a preponderance of the evidence that:

(1) the court has venue of the case;

(2) the person to be appointed guardian is eligible to act as guardian and is entitled to appointment, or, if no eligible person entitled to appointment

applies, the person appointed is a proper person to act as guardian; [and]

. . . .

(4) the proposed ward is totally without capacity as provided by this code to care for himself or herself and to manage the individual's property, or the proposed ward lacks the capacity to do some, but not all, of the tasks necessary to care for himself or herself or to manage the individual's property.

*Id.* § 684(b)(1), (2), (4). The applicant has the burden to prove each element. *Id.* § 684(c).

"The court shall appoint a guardian for a person other than a minor according to the circumstances and considering the best interests of the ward." *Id.* § 677(a) (Vernon 2003). If two or more persons are eligible to be appointed guardian and none of those eligible are the proposed ward's spouse, then the court shall appoint the person nearest of kin to the ward. *Id.* § 677(a)(2). If there is no eligible spouse and there are two or more eligible kinsmen who are related to the ward at the same degree of kinship, then the court shall appoint the kinsman best qualified to serve. *Id.* § 677(a)(3)(B). A person indebted to the ward is ineligible to be appointed guardian unless that person pays the debt before appointment. *Id.* § 681(5) (Vernon Supp. 2009).

A person appointed attorney in fact or agent under a statutory durable power of attorney "is a fiduciary and has a duty to inform and to account for actions taken pursuant to the power of attorney." *Id.* § 489B(a) (Vernon 2003). "A fiduciary owes her principal a high duty of good faith, fair dealing, honest performance, and strict accountability." *Vogt v. Warnock*, 107 S.W.3d 778, 782 (Tex. App.–El Paso 2003, pet. denied) (citing *Sassen v. Tanglegrove Townhouse Condominium Ass'n*, 877 S.W.2d 489, 492 (Tex. App.–Texarkana 1994, writ denied)). "[F]iduciary status does not prohibit the beneficiary from giving the fiduciary gifts or bequests; instead, it insures that the fiduciary will be

prepared to prove the transaction was conducted with scrupulous fairness." *Id.* at 784.

Regardless of whether a fiduciary acts under the power of attorney, the execution of "the

power of attorney conclusively establishe[s] the fiduciary relationship." *Id.* at 782.

## IV. ANALYSIS

Allen argues that the evidence supporting the trial court's decision is legally and

factually insufficient to support the trial court's decision. Allen contends that the evidence

conclusively established that Sherry owed substantially more than the $1,197.81 found by

the trial court and that Sherry's inability to produce receipts for all of the cash transactions

was a violation of her fiduciary duty to Bobby. *Id.* Allen concludes that because Sherry

was indebted to Bobby, she was ineligible to be appointed guardian and that the trial court

abused its discretion in appointing her guardian. *See* TEX. PROBATE CODE ANN. § 681(5)

(providing that a person indebted to the proposed ward is ineligible to be appointed

guardian unless she pays the debt prior to appointment).

In addition to testifying about the oral agreement between Bobby and herself, Sherry

contends that she did not violate her fiduciary duty to Bobby because she had signing

authority on the Champion and Frost accounts and therefore did not use the power of

attorney to write the checks to cash. While under *Vogt*, Sherry's argument is incorrect, we

agree that Sherry satisfied her burden to demonstrate that the transactions were fair to

Bobby and that the trial court did not abuse its discretion in concluding that the evidence

demonstrated Sherry only owed Bobby $1,197.81. *See Vogt*, 107 S.W.3d at 782, 784.

## A. Fiduciary Duty

Contrary to Allen's implied assertion, Sherry's fiduciary duty to Bobby did not require

her to present receipts for each expense paid for with cash from the bank accounts.

9

Sherry's fiduciary duty required her to demonstrate that the transactions were "conducted with scrupulous fairness" to Bobby. *Vogt*, 703 S.W.3d at 784.

Sherry testified that the agreement between her and Bobby that she could use Bobby's funds for "[w]hatever [she] needed" included a commitment to pay Sherry's labor costs, utility bills, phone bills, and rent. On December 31, 2007, Sherry provided Bobby an invoice detailing the amount Sherry spent on each of these expenses. Sherry testified that she arrived at these amounts by adding up all of the expenses listed in the Champion and Frost account statements, subtracting those for which she had receipts, those costs which she could estimate and $300 for rent for thirteen months, and then the remainder she concluded was her labor cost for taking care of Bobby during 2007.[3]

Allen argues that the lack of receipts for many of these expenditures indicates that Sherry must have used these funds for her own personal benefit. Sherry's burden was to demonstrate that the transactions were fair to Bobby, *see Vogt*, 703 S.W.3d at 784, and Allen did not present any evidence contradicting Sherry's claim that Bobby agreed to Sherry's use of her money. Instead, Allen attacked Bobby's capacity to make any agreement regarding her financial affairs.

Allen asserted that Dr. Kutnick's report, along with Dr. Guido's reports, questioned Bobby's competence to make such an agreement or to understand legal documents during late 2006 or early 2007. However, neither doctor stated a date certain upon which Bobby was incapacitated. *See Carney v. Aicklen*, 587 S.W.2d 507, 509, 510-11 (Tex. Civ.

---

[3] The charges on the invoice were as follows: $26,932.06 for labor; $3,900 for rent; $6,360.06 for utilities (electricity, water and gas); $1,442.29 for cable; $554.36 for phone; $8,960 for groceries; $1,120 for beauty shop expenses; $244 for pedicures; $600 for gasoline; and $1,000 for eating out. The invoice stated, "Total care for my mother in 2007 [was] $51,567.77."

10

App.–Tyler 1979, writ ref'd n.r.e.) (concluding that ward became incapacitated on date that treating physician declared her to be incapacitated and was, at that point, incompetent to agree to her money being distributed to her nieces). Additionally, Waldrop, the attorney who prepared the power of attorney on December 20, 2006, asserted his opinion that Bobby knew what she was doing when she signed the power of attorney.

The trial court was the fact-finder, and it was within its province to weigh the evidence, to assess credibility, and to accept or reject any testimony in whole or in part. *See Welborn Mortg. Corp. v. Knowles*, 851 S.W.2d 328, 332 (Tex. App.–Dallas 1993, writ denied). Sherry demonstrated that the expenditures were for taking care of Bobby and with Bobby's agreement. On appeal, we will not second-guess the trial court's assessment of the conflicting evidence, and on this record, we conclude that Sherry satisfied her burden to prove that the transactions were fair to Bobby.

## B. Amount of Debt Owed

The trial court determined that Sherry was indebted to Bobby and ordered her to pay $1,197.81 for the expenditures which were for her personal benefit.

The record contains evidence: (1) that Bobby agreed to allow Sherry to use her funds for whatever Sherry needed; (2) that Bobby may or may not have been incapacitated at the time she made such an agreement; (3) that Sherry used cash generated from checks she wrote to cash from Bobby's bank accounts to pay for expenses for taking care of Bobby; (4) that some of this cash was used to pay for Sherry's personal expenses; and (5) of the labor costs associated with caring for Bobby. Specifically, the evidence demonstrated that Sherry used Bobby's funds for her own benefit in the following transactions: (1) Sherry's dental work; (2) Sherry's cell phone bill; and (3) repairs to Sherry

11

and Terry's vehicles.  Except for these transactions, there was no evidence that the unaccounted-for cash expenditures were used exclusively for Sherry's benefit.

Reviewing the record as a whole under the abuse of discretion standard, *Trimble*, 981 S.W.2d at 214, we find that the trial court did not abuse its discretion.  Where, as here, the trial court bases its decision on conflicting evidence, it does not abuse its discretion. *See Barber*, 982 S.W.2d at 366.  The trial court's decision is not contrary to the only permissible view of the evidence. *Id.*  Some evidence reasonably supports the trial court's conclusion, and even if we may have decided the issue differently, we will not substitute our judgment for the trial court's. *Erickson*, 208 S.W.3d at 743.  We overrule Allen's appellate issue.

## V. Conclusion

Having found that the trial court did not abuse its discretion by finding that Sherry was indebted to Bobby for $1,197.81, ordering Sherry to repay that amount, and then appointing Sherry guardian of Bobby, we affirm the trial court's order.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
28th day of January, 2010.

12