COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-252-CV

IN THE MATTER OF J.L.C. APPELLANT

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

In two points, appellant J.L.C., a minor child adjudicated delinquent, appeals the result of his disposition hearing.  He complains that the evidence presented at the hearing was factually insufficient to support the trial court’s  finding that commitment was appropriate and that the trial court erred by not allowing him to cross-examine the State’s complaining witness at the disposition hearing.  He does not challenge the adjudication of delinquency.  We affirm.

BACKGROUND

The same underlying facts were presented at both the adjudication and disposition hearings.  Michael Cummings, the complaining witness, testified at both hearings.
(footnote: 2)
Adjudication Hearing

Michael testified that on April 23, 2006, he was adjusting his lawn sprinkler when he saw four teenaged girls attack another teenaged girl.  He started towards them and passed Appellant, a sixteen-year-old male, who was sitting on the back of a car in front of a nearby house and egging on the attackers.  Michael testified that at his approach, the girls broke off their assault and came towards him, shouted some racial slurs at him, and told him that he was not their parent and to leave them alone.

Michael testified that he had only told the girls to leave the other one alone and that he did not hit anyone.  He testified that Appellant ran up to him and demanded to know if Michael wanted a “piece” of his cousin, one of the attackers, or of Appellant.  Michael testified that Appellant punched him in the left ear and knocked him to the ground and that Appellant and the girls hit and kicked him and then eventually retreated to the house Appellant had been sitting in front of.  A passing motorist called 911 for Michael.  After Michael was examined by paramedics, his wife, Theresa, took him to the hospital to treat his bruises, lacerations, dislocated right elbow, and fractured radial bone. Michael testified briefly at the adjudication hearing about his surgery and physical therapy treatment.

Appellant’s thirteen-year-old cousin, one of the teenaged attackers, testified that Michael got in the face of one of her other cousins, that Appellant came to that cousin’s rescue, and that Michael slapped Appellant, triggering the fight.  She admitted that she did not give this statement to the police even after she found out that Appellant had gotten in trouble.  Appellant disputed Michael’s testimony about the number of girls hitting Michael and who was hit first.  He admitted that he had not given any statement about Michael hitting him first until the adjudication hearing.  The judge adjudicated Appellant delinquent for assault.  
See
 
Tex. Fam. Code Ann
. § 51.03 (Vernon Supp. 2006).

Disposition Hearing

The disposition hearing was heard by a different judge.  At the beginning of the hearing, the judge admitted Appellant’s social history report
(footnote: 3) into evidence and asked Appellant when he had last used marijuana.  Appellant said, “None since I’ve been in trouble,” and responded affirmatively when the judge asked, “So you would be clean today?”  The judge requested a current urinalysis.  The results came back positive for marijuana.  When the judge again asked Appellant when he last used drugs, Appellant replied, “I’d say about three or four weeks ago.”

Michael gave the same testimony as he had at the adjudication hearing, and provided additional testimony about his out-of-pocket medical expenses that were not covered by his insurance company, over $4,000 by the disposition hearing, and his physical therapy.  Photographs of his injuries and documentation of his medical bills were admitted.
(footnote: 4)  Theresa testified about the negative changes the injury had wrought on their lives, including Michael’s subsequent paranoia about being alone in the front yard, their new home security system, the amount of pain medication that Michael had to take, and his difficulties in performing his job and daily activities like brushing his hair and his teeth.

After the trial court heard testimony from Appellant’s probation officer, Tommy Irons, and Appellant’s parents and grandfather, it made the required findings
(footnote: 5) and ordered that Appellant be committed to the Texas Youth Commission (“TYC”).  The trial court cited the following reasons that it was in the best interest of Appellant and of society to commit him to TYC for an indeterminate period of time:

(1) There are no facilities, services or programs available which would meet the needs of the child;

(2) The Court finds that the educational needs of the child can be met by the Texas Youth Commission;

3) The child has been found by the 
COURT
 to have violated Section 
22.01 (MISD) 
of the Texas Penal Code, on or about 
APRIL 23, 2006
, and was adjudicated delinquent on 
JUNE 13, 2006.

(4) The child has been previously adjudicated delinquent [for two violations of section 22.01, adjudicated on November 1, 2005 and July 13, 2005].
(footnote: 6)
 

FACTUAL SUFFICIENCY

In his first point, J.L.C. complains that the evidence presented at the disposition hearing was factually insufficient to support a finding that commitment was appropriate under section 54.04 of the Juvenile Justice Code. 
See 
Tex. Fam. Code Ann
. § 54.04(c), (i).

Standard Of Review

After a juvenile has been adjudicated delinquent, the court has broad discretion to determine disposition.  
In re C.J.H.
, 79 S.W.3d 698, 702 (Tex. App.—Fort Worth 2002, no pet.)
.  Such disposition will not be disturbed absent abuse of that discretion.  
See In re A.E.E.
, 89 S.W.3d 250, 256 (Tex. App.—Texarkana 2002, no pet.).
  To determine whether the trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.  
Downer v. Aquamarine Operators, Inc
., 701 S.W.2d 238, 241-42 (Tex. 1985), 
cert. denied
, 476 U.S. 1159 (1986).  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.  
Id
.

An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence.  
In re Barber
, 982 S.W.2d 364, 365 (Tex. 1998) (orig. proceeding).  Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court’s decision.  
Butnaru v. Ford Motor Co.
, 84 S.W.3d 198, 211 (Tex. 2002).  Whether there is factually sufficient evidence to support the trial court’s findings is a relevant consideration in determining if the trial court abused its discretion.  
See Beaumont Bank v. Buller
, 806 S.W.2d 223, 226 (Tex. 1991); 
Tex. Dep’t of Health v. Buckner
, 950 S.W.2d 216, 218 (Tex. App.—Fort Worth 1997, no writ).  An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered.  
Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965); 
A.E.E
., 89 S.W.3d at 256.  We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding.  
Mar. Overseas Corp. v. Ellis
, 971 S.W.2d 402, 406-07 (Tex.), 
cert. denied
, 525 U.S. 1017 (1998).
(footnote: 7)  In conducting this review, we engage in a two-pronged analysis:  (1) Did the court have sufficient information upon which to exercise its discretion, and (2) Did the court err in its application of discretion?  
See In re M.A.C.
, 999 S.W.2d 442, 446 (Tex. App.—El Paso 1999, no pet.).

Requirements Under Section 54.04(c)

In part of his first point, Appellant argues that no evidence was presented to the trial court that would support a finding that he was a danger to the public.  No disposition may be made unless (1) the child is in need of rehabilitation or the protection of the public requires it, and (2) no disposition placing the child on probation outside his home may be made unless the court finds that the child, in his home, cannot be provided the quality of care and level of support and supervision that he needs to meet the conditions of the probation.  
See
 
Tex. Fam. Code Ann. 
§ 54.04(c).  Appellant does not contest the trial court’s finding that he was in need of rehabilitation.  We discuss the findings required to place a child outside his home below, under section 54.04(i)’s more detailed standard.  
See id. 
§ 54.04(i).

Protection of the Public

The trial court found that a disposition was required for the protection of the public.  In addition to Michael’s testimony regarding the circumstances surrounding his injuries and their severity, accompanied by photographs of his injuries and documentation of his medical expenses, and Theresa’s testimony about how the injury to Michael’s arm had affected his home and work life, the trial court heard testimony from Appellant’s parents, grandfather, and probation officer.

Irons testified that Appellant had been a part of the Juvenile Probation system since May 2005, but only on Irons’s caseload since January 2006. Appellant had two prior adjudications for assault with bodily injury, both involving school-related fights, which Irons had not investigated with school officials.  Irons indicated that he was “vaguely” familiar with the two prior assaults.

The first assault occurred in May 2005 and Appellant was placed on six months’ probation, July 13, 2005 to January 17, 2006, and ordered to attend counseling for anger control and to perform community service.  He then committed a second assault
(footnote: 8) for which he received another six-month probation and was ordered to the Tarrant County Advocate Program (“TCAP”) and the Juvenile Justice Alternate Education Program (“JJAEP”).

The month before his assault on Michael, Appellant successfully completed JJAEP and his TCAP was discontinued.  Appellant was on probation for the second assault when he assaulted Michael and tested positive for marijuana after a urinalysis on May 8, 2006.
(footnote: 9)  Irons testified that since Appellant had been on his caseload for the offense against Michael, there had been no violations on his electronic monitor.  He also testified that Appellant was doing well both in school and in his behavior with his parents, attending church, “and pretty much follow[ing] their rules.”  He reported that Appellant was currently attending a regular high school, had regular school attendance, and had no history of behavior problems at school since January 2006.

Appellant’s grandfather, a pastor, testified that Appellant attended his church on a regular basis, sang in the choir, and was “a good kid.”  He testified that he did not know anything about the fight allegations and that all he knew was that “[Appellant] had got in some scrapes at the school,” but that he did not know the depth of them.  He testified that he was shocked when he heard Appellant had problems with marijuana, “because that’s not his nature.”  He testified that he did agree that Appellant had a temper,  but that “everybody has a temper if we’re provoked.”  He added, “I talked to [Appellant], and I’m surprised at some of the attitude[s] he held, things that he’s done.”

Appellant’s father testified that he knew about the fights at school, but that “when you’re provoked, anything can happen,” and that “you’re not going to sit up there and let nobody hit you for no reason.”  He also testified that he did not know about Appellant’s marijuana use.  Appellant’s mother testified that Appellant is “very respectful to elders or whatever,” that she had no problems with him, and that she did not know about his drug use.  She also intimated that Appellant had been defending his cousin against Michael and denied that his two previous offenses were assaults.

After reviewing the entire record, we conclude that the trial court had sufficient information upon which to exercise its discretion with regard to whether Appellant presented a danger to the public and that it did not err in its application of that discretion.  
See M.A.C.
, 999 S.W.2d at 446.  The trial court could have reasonably found Michael and Theresa’s testimony about Michael’s injuries, the circumstances surrounding the injuries, and the subsequent changes to their lives more credible than Appellant’s grandfather’s assertion that Appellant was “a good kid” who had gotten into a few “scrapes.”  
See Downer
, 701 S.W.2d at 241-42.  It was also in the trial court’s discretion to decide whether Irons’s and Appellant’s parents’ testimony about Appellant’s behavior at home provided a sufficient basis to conclude that Appellant would behave the same way 
outside
 of his parents’ household.  In light of Michael’s testimony and Appellant’s assault history, we cannot say that the evidence supporting the trial court’s finding that a disposition was required for the protection of the public was weak or that the evidence to the contrary was overwhelming.  
See
 
Tex. Fam. Code Ann. 
§ 54.04(c); 
Garza
, 395 S.W.2d at 823.  Therefore, because there was evidence to support the trial court’s finding that a disposition was necessary to protect the public, the trial court did not abuse its discretion.  
See Butnaru
, 84 S.W.3d at 211; 
Barber
, 982 S.W.2d at 365.  We overrule this portion of Appellant’s first point.

Requirements Under Section 54.04(i)

Appellant also claims that no evidence was presented to the trial court that would support a finding that his need for rehabilitation could not take place while living at home.  To commit a child to TYC, the trial court must determine: (1) that it is in the child’s best interests to be placed outside his home, (2) that reasonable efforts were made to prevent or eliminate the need for the child’s removal and to make it possible for the child to return to his home, and (3) that the child, in his home, cannot be provided the quality of care and level of support and supervision that he needs to meet the conditions of probation.  
See
 
Tex. Fam. Code Ann
. § 54.04(i)(1)(A)-(C).  The trial court made all three findings in its order of commitment.

Appellant’s Best Interests

Appellant was adjudicated delinquent for the third time, for his third assault, which he committed while he was on probation for his second assault. He committed his second assault while on probation for his first assault.  He tested positive for marijuana after he committed the third assault and again at the disposition hearing.  The assaults and probation violations occurred while he lived with his parents, and both of his parents and his grandfather testified that they were unaware of his drug use and dismissed or defended his assault history.  Irons did not specifically testify about whether it was in Appellant’s best interests to remain in his parents’ home, although he did testify that Appellant had been living with his grandfather because the electricity had been turned off at his parents’ home prior to the hearing.

The trial court heard Appellant’s parents and grandfather testify and could have concluded that they underestimated Appellant’s problems and could not provide the structure and supervision Appellant would need to remain in either his parents’ or grandfather’s homes.  Given his assault history and the extent of Michael’s injuries, there was certainly some evidence of probative force to support a finding that Appellant’s best interests would be placement outside his home.  
See In re C.G.
, 162 S.W.3d 448, 452 (Tex. App.—Dallas 2005, no pet.).  And in the Juvenile Justice Code, the best interests of children who engage in serious and repeated delinquent conduct are superseded to the extent they conflict with public safety.  
See
 
In re J.P.
, 136 S.W.3d 629, 633 (Tex. 2004).  After reviewing all of the evidence, we cannot say that the trial court’s finding was so against the great weight and preponderance of the evidence as to be manifestly unjust, or that it abused its discretion by making this finding. 
See Butnaru
, 84 S.W.3d at 211; 
Barber
, 982 S.W.2d at 365.

Reasonable Efforts

The trial court found that reasonable efforts had been made to prevent or eliminate the need for the removal and to make it possible for Appellant to return home.  
See
 
Tex. Fam. Code Ann
. § 54.04(i)(1)(B).  Appellant complains that the evidence failed to support this finding and argues that Irons’s testimony established that alternative programs apart from commitment to TYC were available.

In addition to Irons’s testimony previously discussed above, Irons’s summary and assessment in the social history stated:

[Appellant] is a 16 year old juvenile appearing before the Juvenile Court for the 3rd time.  This matter presently before the Court involves his 5th referral to this department and 3rd for Assault.

[Appellant] has received Anger Management through the TCAP Program. [Appellant] had voiced his own concerns about his temper.  [Appellant] would be appropriate for traditional probation, to attend counseling with Family Preservation[,
(footnote: 10)] and to have a drug assessment. 

With regard to this recommendation, when asked if he was aware of the specifics of the prior assault cases, Irons stated that he “would have to read the reports to see exactly what happened,” and indicated that he was satisfied with his assessment as far as recommending traditional probation for Appellant.  He testified that Appellant had not previously been assessed for Family Preservation and that Appellant was doing well in school and in his behavior with his parents.

Appellant cites 
In re A.S. 
to support his reasonable efforts argument.  
See In re A.S.
, 954 S.W.2d 855 (Tex. App.—El Paso 1997, no writ).  However, in 
A.S.
, the court observed that the record contained 
no
 evidence to establish that reasonable efforts had been made to prevent or eliminate the need for A.S.’s removal from the home.  
Id
. at 862-63.  Here, the record shows that Appellant had already completed JJAEP and TCAP when he tested positive for marijuana and violated probation by committing his third assault.  Therefore, the reasoning behind the reversal in 
A.S.
 is inapposite.  
Id
. at 857, 862-63.

Appellant also refers to 
In re N.S.D.
, a case in which the probation officer testified that local services were available which had not been previously used and that it was his opinion that the child could have been rehabilitated using those previously unused local services.  
In re N.S.D.
, 555 S.W.2d 807, 809 (Tex. Civ. App.—El Paso 1977, no writ).  However, in 
N.S.D.
, that was the only testimony in the record and it provided no basis to support the trial court’s given commitment reason, which was that there were no services which had not been used in the past within the community to effectuate the juvenile’s rehabilitation.  
Id
. at 809.  Here, the finding was not that there were “no services, which have not been used in the past, within the community to effectuate the juvenile’s rehabilitation,” but rather that “[t]here are no facilities, services, or programs available 
which would meet the needs of the child
.” 
 
[Emphasis added.] 
 Id.

The statute requires the use of “reasonable” efforts, not all possible efforts, to prevent or eliminate the need for removal.  
See
 
Tex. Fam. Code Ann
. § 54.04(i)(1)(B).  The record demonstrated that other “Intermediate” category services used by Appellant had been insufficient to prevent his assault on Michael.  The trial court implicitly found that Appellant’s problems ran beyond what “Intermediate” category services could solve, supported by testimony at the disposition hearing and other evidence in the record.  
Cf. In re L.G.
, 728 S.W.2d 939, 945-46 (Tex. App.—Austin 1987, writ ref’d n.r.e.) (stating that when the only evidence in the record was to the effect that local services were available and that appellant could have been rehabilitated locally, there was no evidence to support the trial court’s reasons given for commitment).

The trial court had the discretion to determine that the services previously provided to Appellant, although reasonable efforts, had not been sufficient to prevent or eliminate the need to remove Appellant from his home.  In light of Michael’s description of his injuries, Appellant’s completion of “Intermediate” category services prior to the third assault, and the absence of any testimony to show why Family Preservation would be a viable option when TCAP and JJAEP had failed to prevent the third assault,
(footnote: 11) we cannot say that the trial court abused its discretion by finding that commitment was a more appropriate disposition.  We overrule this portion of Appellant’s first point.

Required Care, Support, & Supervision

The trial court found that Appellant, in his home, could not be provided with the quality of care and level of support and supervision he needed to meet the conditions of probation.  
See
 
Tex. Fam. Code Ann. 
§ 54.04(i)(1)(C).  Appellant asserts that the evidence failed to support this finding and that Irons’s testimony established that his family could provide an environment for quality care, support, and supervision.

Irons testified that Appellant was “pretty much follow[ing]” his parents’ household rules and was doing well in his behavior at home, and that he had made sure the electricity was back on at the parents’ house.  Irons did not testify at all about Appellant’s behavior outside of home and school or make any observations about the parents’ level of support or supervision other than to note that “there hasn’t been a problem with his behavior 
at home
.” [Emphasis added.]

Appellant’s father and mother testified that Appellant followed the rules at home and that they believed he would be able to follow the terms and conditions of any probation ordered by the judge.  Appellant’s grandfather testified that he thought Appellant could “make the grade” when asked whether he thought Appellant would be able to follow any rules and terms and conditions of probation if the judge decided to place him on probation. Appellant’s grandfather denied knowing about Appellant’s fights, beyond the school “scrapes,” and claimed that marijuana use was not in Appellant’s nature. Appellant’s mother also testified that she had not known about Appellant’s drug use, although she testified that she did not work and was home all day, and Appellant had been living with his parents while on probation for his prior assaults and while violating that probation.  Appellant’s father testified that he knew about the fights at school but indicated that he thought Appellant had been provoked.

Neither Appellant’s mother nor his grandfather testified with regard to  any support or supervision they could provide to make sure that Appellant met any terms and conditions of probation.  Appellant’s father did testify that he would be with Appellant “every step of the way” if Appellant was ordered to counseling and would make sure that Appellant took responsibility for doing whatever was ordered.  Appellant’s father also testified about his varying work schedule and that he had not been aware of Appellant’s marijuana problem.
(footnote: 12) In 
A.S.
, unlike the instant case, the court held that the evidence supported the juvenile probation officer’s conclusion that A.S.’s mother had adequate control over him and could provide the required level of care and support.  
A.S.
, 954 S.W.2d at 862-63.  The court stated that the only contradictory evidence in the record was the offense at issue and his violation of his mother’s curfew while committing that offense, and that there was no evidence to establish that A.S. had committed any other offenses.  
Id
. at 863.  A.S. had never been referred by the probation offices in either El Paso or Midland, where the mother had moved the family in order to protect A.S. from gang influences.  
Id
.  In contrast, the record shows that Appellant has established a pattern of assaults and probation violations, and his probation officer testified only that Appellant “would be appropriate for traditional probation” and followed his parents’ home rules.
(footnote: 13)  Considering all of this testimony, we hold that there was factually sufficient information for the trial court to conclude that Appellant could not be provided with the quality and level of care, support, and supervision needed to meet probation conditions and keep him in his home, because the evidence supporting the trial court’s finding was not so weak, nor evidence to the contrary so overwhelming, that the finding should be set aside.  
See Garza
, 395 S.W.2d at 823.  Therefore, the trial court did not abuse its discretion in making its finding.  
See M.A.C.
, 999 S.W.2d at 446.  We overrule this remaining portion of Appellant’s first point.

CROSS-EXAMINATION

In his second point, Appellant complains that the court erred by not allowing him to fully cross-examine Michael at the disposition hearing and that this constituted a violation of his Sixth Amendment right to cross-examination of witnesses at trial.

Preservation Of Error

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P. 
33.1(a); 
see also 
Tex. R. Evid
. 103(a)(1).  If a party fails to do this, error is not preserved, and the complaint is waived.  
Bushell v. Dean
, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh’g).  Here, Appellant complains that he was not allowed a full cross-examination of Michael at the disposition hearing, essentially arguing that error occurred in the exclusion of evidence.  To preserve error when evidence is excluded, Appellant must have made a timely and specific objection and must have presented a formal bill of exception to the trial court unless the substance of the excluded evidence was apparent from the context within which the questions were asked.  
See
 
Tex. R. App. P
. 33.2.; 
Tex. R. Evid.
 103(a)(2).

At the disposition hearing, Appellant’s counsel cross-examined Michael as follows:  

Q: Mr. Cummings, this is the first time that you have said that this girl was getting beat up.  That was not the case.  She was not getting beat up at all, was she?

A: Yes, she was.

Q: Then why did you not testify to that at the prior trial.  Why did you say that she was just swinging?

State: Your Honor, I’m going to have to object that this is outside the scope of this disposition hearing.  [Appellant has] already been adjudicated delinquent.

Appellant’s counsel: Your Honor, we just went through the whole 

trial again in front of you unfortunately.

Court: Well, I’m not going to try this case again.  I will allow you to answer this one question; however, that’s it.  We’re not going to go into any further defenses and retry this case, because he testified about what he saw and you had a right to cross-examine him about that issue in those questions.

Appellant’s counsel: Well, his testimony has changed, Your Honor, 

and I’d just like to put that out to the court.

Court: All right.  Well, he can answer that question.  Can you answer that question?

A: The girls were hitting, punching, and kicking her.  They were beating her up, and that’s why I decided to go across the street and to stop it, and that’s the way I testified.[
(footnote: 14)]

Q: Your Honor, may I ask one more question?

Court: All right.

Q: And I assume you’re still denying the fact that you struck Mr., or you struck this young man—

A: I did not strike any one of the five teenagers.

Q: —before the altercations happened?

A: No, I did not strike him.

Appellant’s counsel: That’s what I thought.  I don’t have any 

questions of this witness, Your Honor.

Appellant did not present a bill of exception at the disposition hearing to demonstrate what evidence he would have otherwise attempted to obtain on cross-examination, and the questions that he did ask were answered.  He concluded by stating, “I don’t have any questions of this witness.”  At the hearing on his motion for new trial, Appellant argued to the judge

[W]hen you have one judge doing disposition and one doing the adjudication, you basically heard one side of the story.  I don’t think you were allowed to hear the mitigating and the self-defense and the issues about the other parties involved, and I understand you don’t want to relitigate the case [from] the adjudication, but at the same time, 
I think the testimony of [Appellant] and the testimony of the cousins who were there with him would have probably had a different effect on what your ruling was
.  [Emphasis added.]

Although Appellant and his cousins testified at the adjudication hearing, none of them testified at the disposition hearing.  Appellant complains that his right to cross-examination of Michael was violated, but he has neither preserved nor presented anything for our review.  
See
 
Tex. R. App. P. 
33.2.; 
Tex. R. Evid
.103(a)(2).
(footnote: 15)  Therefore, we overrule his second point.

CONCLUSION

Having overruled both of Appellant’s points, we affirm the judgment of the trial court. 

PER CURIAM

PANEL F:  HOLMAN, J.; CAYCE, C.J.; and LIVINGSTON, J.

DELIVERED:  April 19, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Michael is a forty-seven-year-old married father of five who works as a human resources manager at Home Depot.

3:
The social history report listed Appellant’s two previous assault offenses. Appellant was adjudicated delinquent on each offense.

4:
Michael testified that he sustained a cut to his ear from the blow that knocked him to the ground.  When he hit the ground, he sustained a cut near his eye and testified that he “received multiple fists to the back of the head” and kicks on both of his arms.  He testified that he sustained a dislocated and fractured right elbow, and the radial arm of his right elbow was broken in half. He testified that two weeks after the assault, he had surgery to reconstruct the elbow and an appliance and five screws were installed to reattach the fragments and bone sections that broke off the top of the bone.  To regain movement and use of his arm, he attended physical therapy two to three times a week.

5:
It found that Appellant was in need of rehabilitation and “that the protection of the public and the child requires that disposition be made.”  It found that it was in Appellant’s best interest to be placed outside his home, that reasonable efforts were made to prevent or eliminate the need for the removal and to make it possible for Appellant to return home, and that Appellant, at his home, could not be provided the quality of care and level of support and supervision needed to meet the condition of probation.

6:
Under these facts, the court could commit Appellant to TYC without a determinate sentence.  
See
 
Tex. Fam. Code Ann
. § 54.04(d)(2) (Vernon Supp. 2006) (stating that when child has been adjudicated delinquent and the requirements of subsection (s) are met, of the grade of misdemeanor, the juvenile court may commit the child to TYC without a determinate sentence).  Subsection (s) provides that the court may make such a disposition if (1) the child has been adjudicated as having engaged in delinquent conduct violating a penal law of the grade of misdemeanor on at least two previous occasions, (2) of the previous adjudications, the conduct that was the basis for one of the adjudications occurred after the date of another previous adjudication, and (3) the conduct that is the basis of the current adjudication occurred after the date of at least two previous adjudications.  
Id
. § 54.04(s).  Appellant’s offense history established that he fulfilled subsection (s)’s requirements.

7:
W
e apply the criminal standard of review to a claim that the evidence was factually insufficient to support an 
adjudication
 of delinquency, because in a juvenile adjudication proceeding, the State must prove beyond a reasonable doubt that the juvenile engaged in delinquent conduct, the same burden as in a criminal case at guilt-innocence.  
C.J.H.
, 79 S.W.3d at 702-03.  But we apply the civil standards when reviewing the factual sufficiency of the findings at the 
disposition
 phase, because, like the punishment phase in a criminal case in which the State generally has no burden of proof, the family code imposes no burden of proof on the State. 
 Id
.

8:
There is a conflict in the record with regard to the date of the second assault.  Irons testified that Appellant was still on probation for his first assault when he committed his second assault on October 13, 2005.  However, Appellant’s social history shows that the second assault occurred on October 13, 2006.  The social history contains the error because the probation period for the second assault is listed as “11/01/06 to 5/01/06,” a temporal impossibility.  The disposition order shows that Appellant’s second assault actually occurred on October 13, 2005, with an adjudication on November 1, 2005, which would have made his probation period from November 1, 2005 to May 1, 2006.  Therefore, he was still on probation for his second assault when he assaulted Michael on April 23, 2006.

9:
The social history also lists a theft referral on Appellant, for property $500-1500, and that he received a supervisory caution.  Although the social history lists the date of the referral as “04/11/05,” it is listed after both of his prior assaults.

10:
“Family Preservation” is a program that provides

[I]ntensive in-home and 24-hour crisis intervention services to youth on probation and their families who are experiencing problems that may be contributing to the youth’s unlawful behavior.  Families receiving Family Preservation services are seen in their homes at least once or twice weekly by a Family Preservation specialist, and they have 24-hour accessibility to a therapist for emergencies.  Family Preservation utilizes counseling, skills-based treatment (parenting, social skills, anger management, conflict resolution, problem solving, and daily living skills), and resource coordination as intervention strategies, based on a plan developed in concert with each family.  Services last four to six months and are provided via contract with Lena Pope Home. 

Tarrant County Juvenile Services, Family Preservation, http://www.tarrantcounty.com/ejuvenile/cwp/view.asp?A=737&Q=427759 (last visited March 29, 2007).

Tarrant County Juvenile Services has a variety of programs, categorized from least to most restrictive.  
See
 
id
., Continuum of Services, http://www.tarrantcounty.com/ejuvenile/cwp/view.asp?a=738&q=427857 (last visited March 29, 2007).  Juvenile Services lists Family Preservation with TCAP and JJAEP in the “Intermediate” category.  
Id
.  Texas Youth Commission is listed in the more restrictive “Secure Care” category.  
Id
. 

11:
After Irons was asked why Appellant was not assessed for Family Preservation after the second assault, the record reports Irons’s reply as, “TCAP, then Family Preservation (inaudible).”  This is the extent of testimony about Family Preservation at the disposition hearing.

12:
Appellant’s father testified that the electricity had been shut off to their home because he had lost his job but that he had found another job and now the utilities were back on.  He testified that at his new job, he works from noon to “whatever time I finish in the evening,” and elaborated that this could be anywhere between nine and eleven.

13:
Irons testified that Appellant’s parents “said [Appellant] was doing well at home,” and that “as far as their control over him and then him doing things that he’s supposed to do for his parents and his behavior with his parents, he’s doing well.”

14:
Michael’s testimony was essentially the same at both hearings.  He testified at the adjudication hearing, “At first, I thought [the girls] were just going over to talk to [the other girl], but then I realized that they were taking swings at her, that it was less than friendly.  At this point, two more girls went running across the street and surrounded the girl, also pushing, shoving, kicking her, and pretty much herding her . . . .”  He testified that after he began to follow them,  “They were about a half a block ahead of me, still moving and walking as they were pushing and kicking and hitting at this girl.”

15:
Even assuming Appellant had preserved and presented his bill of exception, the trial judge was correct in her statement that the adjudication did not need to be relitigated.  A finding of delinquent conduct must be arrived at through an adjudication hearing that provides full due process safeguards.  
See J.K.A. v. State
, 855 S.W.2d 58, 61 (Tex. App.—Houston [14th Dist.] 1993, writ denied).  However, after the court has found delinquent conduct at the adjudication hearing, the 
only
 issue at the disposition hearing is the proper corrective action to be imposed, so there is no need for any new adjudication of delinquent conduct.  
See id. 
at 61-62; 
see also In re M.P.
, 2007 WL 417126, at *8 (Tex. App.—Waco February 7, 2007, no pet. h.) (stating that a juvenile has no Sixth Amendment right of confrontation during the disposition phase).