

# NUMBER 13-16-00652-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

XL INSURANCE COMPANY
OF NEW YORK, INC.,                                          Appellant,

v.

JUAN LUCIO,                                                 Appellee.

### On appeal from the County Court at Law No. 2
### of Cameron County, Texas.

# OPINION

### Before Justices Rodriguez, Contreras, and Hinojosa
### Opinion by Justice Hinojosa

Appellant XL Insurance Company of New York, Inc. (XL New York) appeals from

a no-answer default judgment that awards appellee Juan Lucio approximately $144,500.

In two issues, XL New York complains that (1) the trial court abused its discretion in

denying its motion to set aside the default judgment, and alternatively, for new trial (the post-judgment motion); and (2) the amount awarded exceeds the stipulation Lucio filed along with his original petition, which, according to XL New York, requires us to reform the judgment, suggest a remittitur, or remand for a new trial on damages. We affirm in part and reverse and remand in part with instructions.

## I. BACKGROUND

According to Lucio's April 17, 2015 original petition, a hail storm severely damaged his Cameron County home, and he filed a claim for damages on a homeowner's insurance policy issued by XL New York. After XL New York allegedly underpaid his claim, Lucio sued it within two years of the storm's occurrence. Under the causes of action section of Lucio's original petition, he lists "XL at Lloyd's, London" as the defendant, and asserts claims for violations of the Texas Insurance Code, breach of contract, breach of the duty of good faith and fair dealing, and fraud. Lucio's petition sought damages over $10,000 but no more than $70,000. Contemporaneously with his original petition, Lucio also filed a stipulation addressed to "Underwriters At Lloyd's, London, by and through its Agent for Service, Edward T. Smith, at Mendes & Mount, 750 Seventh Avenue, New York, NY 10019." The stipulation provides that the damages "shall not exceed $74,000.00 inclusive of penalties, interest, attorney's fees, or any other damages the Plaintiff may be entitled to recover."

XL New York's registered agent in Texas received Lucio's original petition and the citation on April 27, 2015. That same day, XL New York's registered agent forwarded these documents by email to, among others, Barbara Brown, a paralegal. In an affidavit

2

in support of XL New York's post-judgment motion, Brown described herself as a paralegal employed by XL Global Services, Inc. (XL Global). XL New York and XL Global are, according to Brown, affiliated companies and indirect, wholly-owned subsidiaries of XL Group Ltd. (XL Group). Brown receives legal documents from the registered agents for XL Group companies, including XL New York. As for receipt and processing of legal citations, Brown explained:

> During any given calendar year, it is normal for more than one hundred lawsuits to be filed against XL Group Ltd.'s companies. When I receive notice from a registered agent that a new lawsuit has been filed against an XL Group Ltd. company, it is my standard practice to review various claims and underwriting databases/systems and attempt to identify an appropriate claim number and/or policy number pertaining to the lawsuit and to then forward the matter to the appropriate employee for handling. If it is determined that there are no underlying records relating to that lawsuit, it is my standard practice to notify the claimant's attorney of the need for additional information and/or the possibility that the XL Group Ltd. company has been incorrectly sued. No attorney is retained to represent the XL Group Ltd. company until after the alleged insured demonstrates intent to continue pursuing its claim against the XL Group Ltd. Company.
>
> In accordance with these standard practices, after receiving . . . Lucio's Original Petition, I unsuccessfully attempted to locate a policy issued by [XL New York] to him or covering the property described in the pleading. I was also unable to locate any records of any pre-litigation claim submitted by Lucio to [XL New York]. I also noticed that the Original Petition contained references to and claims asserted against entities that are not XL Group Ltd. companies. Therefore, on April 28, 2015, I sent an email to Lucio's legal counsel informing Lucio that [XL New York] had no records relating to him.

Brown's April 28, 2015 email states:

> We can find no record of insuring this claim. Therefore, we are suggesting you contact Folksamerica Insurance for possible coverage.
>
> Briefly, XL Insurance Company of America, Inc. was originally known as Great Lakes American Reinsurance Company ("GLARC"), which was incorporated in September 1994 and licensed to transact business on

October 1, 1994. GLARC was acquired by Folksamerica Holding Company in July 1997 and was renamed Folksamerica General Insurance Company. That company (whose assets and liabilities were transferred via a transfer and assumption agreement to Folksamerica Reinsurance Company) was subsequently purchased by X.L. America, Inc. in March 1998 and its name was changed to X.L. Insurance Company of America, Inc., later to be renamed XL Insurance Company of New York.

Thank you for your cooperation and assistance.

Brown avers that she "never received a written or oral response to [the above-quoted] e-mail, and [she has] no personal knowledge that Lucio or his legal counsel ever attempted to speak with [her] regarding" it.

On January 28, 2016, the trial court sent a notice of intent to dismiss the case for want of prosecution and set a hearing for March 30, 2016. No one appeared at the March 30, 2016 hearing; on that day, the trial court signed an order of dismissal for want of prosecution.

Within thirty days, Lucio filed a motion to reinstate, which pleads:

Plaintiff will show good cause exists why the above styled and numbered case should not be dismissed for want of prosecution, in that Plaintiff's counsel did not receive a copy of the Court's notice that this matter was set for dismissal for want of prosecution on March 30, 2016, thus the event was not properly calendared.

Defendant was served by the Clerk of this Court with Citation by Certified Mail on April 27, 2015; however, Defendant has failed to file an answer in this matter.

Plaintiff requests this Court give Defendant more time to formally appear and/or answer in this cause.

The trial court granted Lucio's motion to reinstate on April 15, 2016.

Later, the trial court signed an order setting the case for a jury trial on August 29, 2016. The week before a jury trial was scheduled to begin, Lucio filed a motion for

4

default judgment.   On August 29, 2016, the trial court signed a default judgment against

XL New York, which in part provides:

> That Defendant XL Insurance Company of New York, Inc. knowingly engaged in acts and practices defined in Texas Insurance Code Section 541, Subchapter B, Unfair Methods of Competition and Unfair or Deceptive Acts or Practices Defined, actionable under Subchapter D, Private Action.
>
> That Defendant XL Insurance Company of New York, Inc. breached the duty of good faith and fair dealing that it owed to Plaintiff[.]
>
> That Defendant XL Insurance Company of New York, Inc. has violated Section 542 of the Texas Insurance Code.   Plaintiff is entitled to additional statutory interest on the economic damages at 18% per year, simple interest, beginning on July 3, 2014.
>
> Plaintiff is awarded the following as damages against Defendant XL Insurance Company of New York, Inc.:
>
> > a. Actual damages in the amount of $70,000.00;
> >
> > b. Prejudgment interest beginning 60 days from the initial notice of claim (July 3, 2014) pursuant to Texas Insurance Code Section 542 in the amount of $24,500.00 calculated[.]
>
> The Court further orders that if Defendant unsuccessfully appeals this judgment to an intermediate court of appeals, Plaintiff will additionally recover from Defendant the amount of $25,000.00, representing the anticipated reasonabl[e] and necessary fees and expenses that would be incurred by Plaintiff in defending the appeal.
>
> The Court further orders that if defendant unsuccessfully appeals this judgment to the Texas Supreme Court, Plaintiff will additionally recover from Defendant the amount of $25,000.00, representing the anticipated reasonabl[e] and necessary fees and expenses that would be incurred by Plaintiff in defending the appeal.
>
> It is additionally Ordered that Plaintiff recover all Costs of Court Tax [sic] for which let execution issue.

On September 26, 2016, XL New York filed a motion to set aside judgment, and

alternatively, for new trial.   In Brown's accompanying affidavit, she acknowledges

receiving from XL New York's registered agent (1) Lucio's original petition the same day XL New York's registered agent received it, (2) the notice of intent to dismiss Lucio's lawsuit for want of prosecution six days after it was signed, (3) the order granting Lucio's motion to reinstate fourteen days after it was signed, (4) the order setting the case for trial seven days after it was signed, and (5) the default judgment fifteen days after it was signed. Brown does not mention when she received the March 30, 2016 order of dismissal for want of prosecution. Nevertheless, Brown further testifies:

> When I saw the Order on Dismissal for Want of Prosecution Hearing, I believed that the court was dismissing Lucio's lawsuit because he had abandoned it. I was personally unaware of any litigation activity occurring between the date of my e-mail to Lucio's legal counsel and the date of this order.
>
> For these reasons, I did not understand from the subsequent litigation activity of which I received e-mail notice from [XL New York's] registered agent that the [c]ourt reinstated Lucio's lawsuit and set a trial date, and I did not forward these materials to any other individuals at XL Group Ltd.
>
> As soon as I received e-mail notice of the Final Default Judgment, I contacted an Associate General Counsel within the Legal Department. We looked again for pre-litigation records relating to Lucio and remain unable to confirm any relationship between Lucio and [XL New York].

On October 12, 2016, the trial court heard XL New York's post-judgment motion and signed an order denying it that same day. This appeal followed.

## II. DISCUSSION

In XL New York's first issue, it complains that the trial court abused its discretion in denying its post-judgment motion because Brown's affidavit testimony negated conscious indifference, which is the first factor in the *Craddock* test for setting aside a default judgment.

**A.    Standard of Review**

Denial of a motion for new trial is reviewed for abuse of discretion.    *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010).    A trial court abuses its discretion if it acts without reference to any guiding rules or principles or fails to correctly analyze or apply the law.    *Celestine v. Dep't of Family & Protective Servs.*, 321 S.W.3d 222, 235 (Tex. 2010).

**B.    *Craddock* Factors**

In *Craddock v. Sunshine Bus Lines, Inc.*, the court set forth three requirements that a defendant must satisfy to set aside a default judgment and obtain a new trial:    (1) the failure to file an answer or appear at a hearing was not intentional or the result of conscious indifference, but was a mistake or accident; (2) a meritorious defense; and (3) a new trial will not result in delay or prejudice to the plaintiff.    133 S.W.2d 124, 126 (Tex. 1939).

**1.    Conscious Indifference**

Failing to file an answer intentionally or due to conscious indifference means "the defendant knew it was sued but did not care."    *Fid. & Guar. Ins. Co. v. Drewery Const. Co.*, 186 S.W.3d 571, 576 (Tex. 2006).    When determining whether the defendant's failure to file an answer was intentional or due to conscious indifference, a court looks to the knowledge and acts of the defendant.    *Dir., State Emps. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 269 (Tex. 1994).    Not understanding a citation and then doing nothing following service does not constitute a mistake of law that is sufficient to meet the *Craddock* requirements.    *See Bank One, Tex., N.A. v. Moody*, 830 S.W.2d 81, 84 (Tex.

1992) (citing *Butler v. Dal Tex Mach. & Tool Co.*, 627 S.W.2d 258, 260 (Tex. App.—Fort Worth 1982, no writ)). But, "some excuse, although not necessarily a good one, will suffice to show that a defendant's failure to file an answer was not because the defendant did not care." *Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012) (quoting *In re R.R.*, 209 S.W.3d 112, 115 (Tex. 2006)).

### 2. XL New York's Arguments Regarding Conscious Indifference

Because the *Craddock* standard is equitable, its application will vary on a case-by-case basis. *Id.* at 756. As such, XL New York poses five factual scenarios, accompanied by case law, supporting its contention that Brown did not act with conscious indifference.

First, XL New York references *Shelly v. Eubanks*, No. 05-96-00195-CV, 1998 WL 30709, at *3 (Tex. App.—Dallas Jan. 29, 1998, no pet.), for the proposition that a new trial should be granted when a layperson fails to answer a second lawsuit after the first lawsuit has been dismissed for want of prosecution. In *Shelly*, Eubanks sued Shelly for misrepresenting that a sacrolumbar system Shelly sold to Eubanks would be reimbursable by Medicare when it was not. *Id.* at *1. The district court dismissed Eubanks' lawsuit for want of prosecution after a year. *Id.* Shelly's counsel objected to reinstatement. *Id.* Instead of seeking an opposed reinstatement, Eubanks initiated a second lawsuit in a different district court in the same county. *Id.* In contravention of the court's local rules, Eubanks did not inform the second district court of the prior lawsuit. *Id.* When Shelly received citation in the second lawsuit, based on his experience with the initial lawsuit, he believed that he had contacted his counsel again and that his counsel

8

had already prepared his defense. *Id.* Shelly was mistaken, and Eubanks obtained a default judgment in the second lawsuit. *Id.* In reversing the trial court's denial of Shelly's motion for new trial, the Fifth Court of Appeals held that:

> Eubanks obtained the default judgment after re-filing the lawsuit in discordance with the local rules. In light of the dismissal of the previous lawsuit for want of prosecution and the circumstances surrounding the default judgment, we are unable to construe Shelly's mistaken belief that a second answer had been filed as conscious indifference.

*Id.* at *3.

Second, XL New York references *Gotcher v. Barnett*, 757 S.W.3d 398 (Tex. App.—Houston [14th Dist.] 1988, no writ), for the proposition that Texas courts recognize that a default judgment should be set aside when a layperson is confused by a dismissal order. In *Gotcher*, Barnett sued Gulf States Yachts, Inc., Gulf States' president William Gotcher, and Brenda Gotcher, over the sale of a yacht. *Id.* at 400. Although the Gotchers were served with citation, they failed to answer. *Id.* Several months later—and while the parties were in settlement negotiations—the trial court dismissed Barnett's claims against Gulf States, leaving the Gotchers as the only remaining defendants. *Id.* at 400, 402. Notwithstanding the settlement negotiations, the trial court signed a default judgment in Barnett's favor for $245,349.55. *Id.* at 400. The Fourteenth Court of Appeals held that the trial court should have concluded the Gotchers' failure to answer resulted from their somewhat cavalier but nonetheless mistaken reliance on Barnett, and it reversed the trial court's denial of the Gotchers' motion for trial *Id.* at 402.

Third, XL New York contends that conscious indifference is negated when there is evidence that laypersons attempted to follow their employer's normal procedure for

handling lawsuits. In both of the cases that XL New York references, the company procedures called for a company employee to forward the citation and original petition to the company's insurance agent. *See Sw. Warren, Inc. v. Crawford*, 464 S.W.3d 822, 830 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (holding that an employee's forwarding of a citation to his employer and a company owner's mistaken belief that he had informed the company's insurance agent of a lawsuit, both in accordance with company procedure, satisfy the lack of conscious indifference factor in *Craddock*); *see also Culinaire of Fla. v. FelCor/CSS Holdings, LP*, No. 05-14-00832-CV, 2015 WL 3769580, at *3 (Tex. App.— Dallas Jun. 17, 2015, pet. denied) (mem. op.) (holding that a chief financial officer's mistaken belief that he had followed company procedure by forwarding lawsuit documents to the company's insurer did not constitute consciously indifferent conduct).

Fourth, XL New York contends that Brown's unilateral determination that it did not issue an insurance policy to Lucio and her conveyance of this determination to Lucio's counsel via email is "not the conduct of someone who knew that her employer was sued but did not care." XL New York points to cases wherein a paralegal's mistake is found to satisfy the lack of conscious indifference prong. *See In re A.P.P.*, 74 S.W.3d 570, 574 (Tex. App.—Corpus Christi 2002, no pet.) (holding conscious indifference negated where defendant entrusted a friend to drop off the citation at her attorney's office and the defense attorney noted that the citation was inadvertently placed in the defendant's old file); *see also Cervantes v. Cervantes*, No. 03-07-00381-CV, 2009 WL 3682637, at *8 (Tex. App.— Austin Nov. 5, 2009, no pet.) (mem. op.) (holding that a paralegal's misunderstanding regarding a need to calendar an answer deadline was sufficient to negate conscious

10

indifference on the attorney's part); *Computer Assocs. Int'l, Inc. v. Wall's Catering & Party Prod.*, No. 05-01-01633-CV, 2002 WL 1767223, at *3 (Tex. App.—Dallas Aug. 1, 2002, no pet.) (holding that affidavit testimony from an employee who copied the citation and petition and "attempted to send" them to the company's legal department is sufficient to negate conscious indifference).

Fifth, XL New York blames Lucio's counsel for "accidents leading" to the default judgment. It contends that Lucio's counsel drafted an original petition that contains confusing references to other insurance carriers,[1] did not communicate with XL New York after it was served with citation, and did not warn it of the impending default judgment. In support of its argument, XL New York references *Cervantes*, 2009 WL 3682637, at *8, and *Levine v. Shackelford, Melton & McKinely, L.L.P.*, 248 S.W.3d 166, 167 (Tex. 2008) (per curiam). XL New York also references the Texas Lawyer's Creed provision providing that a lawyer will not take advantage, by causing any default or dismissal to be rendered, when the lawyer knows the identity of an opposing counsel, without first inquiring about that counsel's intention to proceed. *See* TEX. LAWYER'S CREED—A MANDATE FOR PROFESSIONALISM, § III Lawyer to Lawyer, ¶ 11, reprinted in Texas Rules of Court 736 (West 2018).

### 3.    Analysis of Conscious Indifference Factor

None of XL New York's arguments regarding the first *Craddock* factor are persuasive. Try as it may, XL New York cannot escape the institutionalized indifference that Brown admitted to when she averred that XL Group's policy was to refrain from

---

[1] Lucio's original petition references only one other entity, "XL at Lloyd's, London," twice.

retaining counsel upon receipt of a citation "until after the alleged insured demonstrates intent to continue pursuing its claim against" an XL Group affiliate, such as XL New York. Thus, at the time Brown received the citation, she meant to not retain counsel.

This admission sets Brown's conduct and XL New York's policy apart from that of the defaulting defendants in the referenced cases. In *Shelly*, 1998 WL 30709, at \*3, the defendant meant to and thought he had arranged for his counsel to file an answer. And unlike *Gotcher*, 757 S.W.3d 400–02, XL New York does not contend that it was engaged in settlement negotiations with Lucio. To the contrary, Brown unilaterally determined that XL New York was not a proper party to Lucio's lawsuit.[2] The company procedures in *Crawford*, 464 S.W.3d at 830, and *Culinaire*, 2015 WL 3769580, at \*3, called for employees to forward the citation to an insurance agent who was responsible for retaining legal representation. The mistakes in *A.P.P.*, 74 S.W.3d at 574, *Cervantes*, 2009 WL 3682637, at \*8, and *Computer Associates*, 2002 WL 1767223, at \*3, were those of paralegals or other legal staff attempting to follow policies similarly designed to culminate in the filing of an answer.

As for XL New York's fifth argument, we do not read *Cervantes* and *Levine* as supporting XL New York's proposition that a plaintiff's proportionate responsibility for a "misunderstanding" helps establish a lack of conscious indifference on a defaulting

---

[2] Had Brown retained counsel, she would have discovered that Texas law affords procedures for suits against the wrong party, such as the filing of a verified denial. *See* TEX. R. CIV. P. 93.4 (providing that a defect of parties, unless the truth of such appears of record, shall be verified by affidavit). If XL New York believed that Lucio failed to conduct a reasonable inquiry of his allegation, it may have, with the representation of counsel, sought sanctions. *See e.g., Low v. Henry*, 221 S.W.3d 609, 616 (Tex. 2007) (agreeing with physicians that an attorney violated chapter 10 of the Texas Civil Practice and Remedies Code by alleging that they prescribed and administered a medication in spite of information to the contrary in the medical records of the attorney's client).

defendant's part.  In *Cervantes*, the court wrote:

> [The plaintiff/appellee] has presented no evidence to controvert [the defaulting defendants'/appellants'] contention that their attorney was unaware that a petition was filed and an answer was due.  Nor has [the plaintiff/appellee] presented evidence that she warned appellants or their attorney that she would take a default or that appellants or their attorney had engaged in a pattern of disregarding deadlines.  She likewise has not presented evidence controverting appellants' proof of the paralegal's error in failing to enter the petition into the internal docketing system.

2009 WL 3682637, at *8.  The court appears to be applying the rule in *Evans*, 889 S.W.2d at 268, that if the plaintiff does not controvert the defendant's affidavits in support of a new trial motion, the trial court must accept as true the affidavits' factual assertions regarding the conscious indifference element in the *Craddock* analysis.  In *Levine*, the supreme court affirmed the denial of a motion to set aside a default judgment because the defaulting defendant's attorney knew of an answer deadline, agreed to file an answer by that date, but never attempted to confirm that an answer was filed despite repeated discussions, emails, and contact with the opposing party warning him that if he did not file an answer, a default judgment would be taken against his client.  248 S.W.3d at 167.

XL New York's reference to the lawyer's creed evidences an implicit belief that Lucio's counsel should have treated Brown as "an opposing counsel."  Indeed, Brown's interpretation of motions and orders and her decisions on XL New York's behalf arguably constitutes the practice of law.  *See* TEX. GOV'T CODE ANN. § 81.101(a) (West, Westlaw through 2017 1st C.S.) (defining the "practice of law" as including "the management of the action or proceeding on behalf of a client before a judge in court as well as a service rendered out of court").  Nevertheless, the lawyer's creed does not set a standard; it is aspirational.  *See PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 276 (Tex. 2012).  It does

13

not create new duties and obligations enforceable by the courts beyond those existing as a result of (1) the courts' inherent powers and (2) the rules already in existence. *Id.* (citing THE TEXAS LAWYER'S CREED—A MANDATE FOR PROFESSIONALISM, reprinted in Texas Rules of Court 865, 865 (West 2012)).

### 4. Summary

We hold that, based on the evidence presented to the trial court, the trial court was within its discretion in finding that XL New York's failure to file an answer to Lucio's original petition was intentional or the result of conscious indifference. XL New York has failed to show that the trial court, in denying its motion to set aside the default judgment, acted arbitrarily or without reference to any guiding legal principles under *Craddock*. Because of our disposition of the conscious indifference prong in the *Craddock* analysis, we need not address XL New York's arguments regarding the remaining factors. *See* TEX. R. APP. P. 47.1.

XL New York's first issue is overruled.

## C. Damages

In XL New York's second issue, it contends that the amount awarded is excessive considering Lucio's stipulation "that the damages in this case shall not exceed $74,000.00 inclusive of penalties, interest, attorney's fees, or any other damages" filed at the lawsuit's

inception.[3]   XL New York asserts that "Lucio should be held to his Stipulation."[4]

In *Capitol Brick, Inc. v. Fleming Manufacturing Co.*, 722 S.W.2d 399, 401 (Tex. 1986) (op. on reh'g), a default judgment for an amount more than the damages specified in the petition was rendered against a manufacturer.   The Texas Supreme Court wrote that "[i]t is impermissible in a default judgment to render judgment for damages in excess of the damages specifically pleaded."   *Id.* (citing *Mullen v. Roberts*, 423 S.W.2d 576, 579 (Tex. 1968)); *see also* TEX. R. CIV. P. 301 (providing that the judgment of the court shall conform to the pleadings).   Under *Capitol Brick*, the trial court in this case erred in signing a judgment that awarded more monetary relief than Lucio sought.   *See* 722 S.W.2d at 401.

On appeal, XL New York prays for us to reform the judgment to conform to the stipulation, suggest a remittitur, or remand the cause for a new trial on damages—in that order.   However, XL New York has not challenged the legal sufficiency of the evidence supporting the default judgment's award of damages, and it has not argued any other theory that would enable this Court to remand for a new trial on damages.   *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 86 (Tex. 1992) (providing that when an

---

[3] In *Young v. Kirsch*, 814 S.W.2d 77, 81–82 (Tex. App.—San Antonio 1991, no writ) (en banc) the court held that the trial court did not abuse its discretion in finding conscious indifference on the part of the defaulting defendant.   The court then considered, among other issues, the defaulting defendant's appellate issue that the default judgment was not supported by the petition because it failed to specify the amount of damages.   *Id.* at 82–83.   The court overruled the defaulting defendant's issue relating to the default judgment's conformity to the pleadings.   *Id.* at 82–83.   Based on *Young*, we assume that we may engage XL New York's second issue even though it failed to prevail on its first issue.

[4] We note that Lucio's petition seeks "monetary relief over $10,000 but not more than $70,000." XL New York's argument focuses on Lucio's stipulation, which sets the upper limit at $74,000, and it treats Lucio's stipulation as a pleading.   We assume, without deciding, that Lucio's stipulation functions as a pleading under *Capitol Brick, Inc. v. Fleming Manufacturing Co.*, 722 S.W.2d 399, 401 (Tex. 1986) (op. on reh'g), for XL New York's second issue.

appellate court sustains a no-evidence point after an uncontested hearing on unliquidated damages following a no-answer default judgment, the appropriate disposition is a remand for a new trial on the issue of unliquidated damages). Instead, the gravamen of XL New York's second issue is that "Lucio should be held to his [s]tipulation." We agree, *see Capitol Brick,* 722 S.W.2d at 401, but the way the default judgment is crafted makes modification of the judgment or suggesting a remittitur impractical from our vantage point. *Cf. Mahon v. Caldwell, Haddad, Skaggs, Inc.*, 783 S.W.2d 769, 772 (Tex. App.—Fort Worth 1990, no writ) (suggesting a remittitur of actual damages and a proportionate reduction of prejudgment interest in a writ of error proceeding from a default judgment that awarded more damages than pleaded for in the petition). The default judgment provides monetary relief for (1) actual damages, (2) prejudgment interest under the insurance code, (3) attorney's fees, and (4) court costs. Given the record and procedural posture, we are not able to reapportion the monetary relief within the $74,000 limit.

XL New York's second issue is sustained.

### III. CONCLUSION

The judgment of the trial court is affirmed as to its liability pronouncements, reversed as to its award of monetary relief, including damages, attorney's fees, interest, and court costs, and remanded with instructions to award monetary relief up to the $74,000 limit in Lucio's stipulation.

LETICIA HINOJOSA
Justice

Delivered and filed the
24th day of May, 2018.

16