

# NUMBER 13-24-00628-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ALL VALLEY INNOVATIONS
GROUP, LLC AND ENRIQUE
J. CASTELLANOS,                                                  Appellants,

v.

WILLIAM CARRELL,                                                  Appellee.

## ON APPEAL FROM THE 197TH DISTRICT COURT
## OF CAMERON COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Silva, Peña, and Fonseca**
**Memorandum Opinion by Justice Fonseca**

Appellants All Valley Innovations Group, LLC (All Valley) and Enrique J. Castellanos appeal from the trial court's post-answer default judgment awarding over $27 million in damages to appellee William Carrell. Appellants contend the trial court erred in denying their motion for new trial because insufficient notice of the trial date amounted to

a violation of due process of law, and they challenge the sufficiency of the evidence supporting the judgment. We reverse and remand for further proceedings because appellants' failure to appear at trial was due to mistake or accident, not conscious indifference.

## I.    BACKGROUND

This appeal arises from a construction contract suit. Carrell is the owner of property located at 2213 Padre Boulevard on South Padre Island. He hired All Valley as a general contractor to perform improvements and repairs at the property.[1] Disputes arose regarding the quality of appellants' work, including allegedly concealing defects that caused damage to the property. Carrell sent a letter firing appellants and demanding damages, but appellants did not pay Carrell's demand.

Carrell filed suit on September 8, 2022, asserting breach of contract, negligence, fraud, and misrepresentation, and requesting actual damages, consequential damages, exemplary damages, pre- and post-judgment interest, attorneys' fees, and court costs. Appellants filed a general denial. Trial was initially set for May 30, 2023, but, following multiple agreed continuances, it was finally reset for August 26, 2024.

On July 31, 2024, appellants' counsel Juan G. Ramos moved to withdraw as counsel in the case, citing appellants' failure to pay his fees. The motion certified that trial was set on August 26, 2024, and that a copy of the motion had been provided to appellants. Carrell opposed this motion.

At the August 15, 2024 hearing on the motion, Ramos claimed he filed the motion due to an inability to communicate with appellants. Appellants did not personally appear

---

[1] Castellanos is the owner of All Valley. We shall collectively refer to them as appellants except where we need to distinguish between the two.

2

at the hearing. Carrell's counsel agreed not to oppose the withdrawal on condition that the trial date not be moved. Ramos confirmed he told Castellanos about the trial setting and about the multiple prior continuances. The trial court stated it would not continue the trial date if appellants obtained new counsel and granted Ramos's motion.

The trial court signed a written order granting the motion, finding "good cause exists for withdrawal" of Ramos. The order further stated the trial court's findings that a copy of the motion was "delivered by certified mail and e-mail" to appellants and that appellants had "been notified in writing of the right to object to the motion" at their last known address and email. The order also stated appellants were notified of the pending August 26, 2024 trial.

On August 23, 2024, John A. Rigney filed his notice of appearance as appellants' counsel. The same day, he filed a motion for continuance citing the need for time to obtain the case file and informing the trial court he had conflicting hearing settings on the trial date. The trial court did not explicitly rule on this motion.

The bench trial occurred on August 26, 2024, after the trial court called out for appellants in the courtroom three times without answer. Carrell proceeded with his default judgment prove-up via his testimony. He testified that he contracted with appellants to renovate his property, but the renovations were defectively constructed and it cost a total of $228,500 to repair. He also testified regarding his other damages, claiming total damages of $23,440,939.40. Carrell's counsel testified to prove up his attorney's fees.

The trial court took judicial notice of its file and granted all of Carrell's requested relief. The trial court entered a final judgment on August 26, 2024. The judgment noted that appellants failed to appear for trial and awarded total damages of $27,308,251.41.

3

This included actual damages of $228,500, past lost profits of $697,387.40, future lost profits of $17,434,685, and punitive damages of $5 million.

Appellants filed a motion for new trial on September 24, 2024, asserting that the awarded damages lacked sufficient evidence and were not properly proven. The motion also argued that Rigney lacked sufficient time to prepare for trial as he was retained as counsel three days prior to trial. Finally, the motion argued that the failure to appear for trial was excusable pursuant to all three *Craddock* factors. *See Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124 (Tex. 1939).

The motion included an affidavit from Rigney explaining his absence from trial. He attested that he had not been monitoring the case (Carrell's counsel claimed the opposite at the bench trial) and had called before trial to seek an agreed continuance. He also attested that he had communicated to Carrell's counsel that he had multiple conflicting hearings on the trial date and could not attend but would seek someone to cover the motion for continuance hearing for him. He further testified that Noe Alaniz in fact attempted to attend the trial, but that Alaniz informed him the court conducted trial without him. Rigney concluded that Carrell's counsel misrepresented their conversation to the trial court.

Carrell responded to the motion for new trial. He argued that the judgment was supported by sufficient evidence and that appellants had proper notice of the trial date. Thus, he asserted appellants' failure to appear at trial was intentional. Carrell also claimed the jurat in Rigney's motion for continuance was defective because it lacked Rigney's birth date. He also claimed there was "no evidence" that Rigney nor Alaniz contacted Carrell's counsel or the trial court the week of trial. Regardless, he further argued that

4

Rigney should have refused to represent appellants because he knew there were only a few days until trial and had insufficient time to prepare.

Carrell attached evidence to his response showing that Rigney previously represented appellants in other cases, and he argued Rigney thus was aware of their trial settings in this case. He also attached an affidavit from his counsel regarding a phone call with Rigney on August 23, 2024, during which Rigney stated he was aware of the August 26, 2024 trial date. He also attested that Alaniz did not file a notice of appearance in the case, did not appear at trial, and did not provide notice he would appear at trial, and that Rigney did not notify him that Alaniz would appear at trial. Carrell's counsel further attested that the demand letter had been sent to appellants by email and certified mail to the same address and email where trial notice was sent.

The trial court held a hearing on the motion for new trial on November 7, 2024. Rigney argued several grounds for granting the motion, including that Ramos was allowed to withdraw three business days before trial, that appellants were "out of town" and could not be contacted to be told about the trial date or that Ramos had withdrawn from the case, and that he attempted to seek an agreed continuance with Carrell's counsel. He further argued that Carrell's counsel lied to the trial court about their communications and his awareness of the trial date. He also attacked the lack of evidence supporting the judgment as argued in the written motion.

Carrell's counsel replied that appellants failed to meet the *Craddock* factors because appellants were aware of the trial date and chose not to appear. He also argued that Rigney did not contact him on the day of trial or afterwards regarding his lack of appearance. He further argued that Carrell's testimony was sufficient to support the

judgment.

Rigney testified he first received notice of the trial date on the Friday before trial. He conceded he had spoken with Ramos about potentially taking over a matter the prior month but did not know it was this matter. He could not attend the trial because he had conflicting cases in Hidalgo County. He claimed that he could not reach appellants before the trial date and thus technically lacked authority to file a motion for continuance or assume representation at that time. Rigney claimed he learned that appellants lacked awareness of the trial date after the fact by speaking to them and Ramos.

Ramos testified that he emailed Rigney on August 19, 2024, to notify him about his withdrawing from the case. He also attempted to notify appellants about his withdrawal via appellants' employees, Julio Aguilera and Maggie Rocha, by email and letter around July 28 and again on August 9. He claimed he withdrew due to lack of payment as well as lack of communication from appellants. Ramos testified that he told Rigney there was a firm trial setting and that Rigney immediately attempted to secure the file around August 21, though did not obtain it until August 23 or August 24. Ramos was unaware of appellants' whereabouts at the time of trial because he did not have communication with them. He also testified that one of the letters he sent to appellants was returned by the postal service. Accordingly, he stated he was not personally aware if appellants became aware of the trial date as his only communications were to appellants' employees. Typically, Castellanos would respond but did not do so in this instance.

Lucio, Carrell's counsel, testified regarding his call with Rigney. He stated he told Rigney that it was "a very bad case" and advised him not to represent appellants because they were proceeding to trial. He testified that he also told Rigney not to take the case if

6

Rigney had conflicting hearings and that he could not agree to a continuance. Lucio disagreed that Rigney told him that he would appear late and could not recall if Rigney stated that he would have another attorney appear. Lucio disagreed that it was a misrepresentation to tell the trial court that he did not know where Rigney was on the morning of trial, despite being told Rigney had hearings in Hidalgo County, because he did not know for certain where Rigney was located. He also disagreed that it was a misrepresentation to state Rigney was monitoring the case because he claimed that was what Ramos told him.

Castellanos testified regarding his lack of notice of the trial date. Carrell's counsel objected to such testimony on the basis that it added new information and reasoning as to the basis for the motion for new trial past the deadline. The trial court did not rule on this objection but stated it would allow the testimony "and give it the proper weight that it should be given based on your objection."

Castellanos stated Ramos did not provide notice of the August 26 trial date and that he did not speak with Rigney prior to the trial setting. He testified he typically spoke with Ramos on the phone, or Ramos contacted his employees who would personally hand him emails, but that those employees no longer worked for him. He did not receive any phone calls from Ramos in July or August 2024 and had not spoken with him for "a year, a year and a half"—though he conceded he did not attempt to contact Ramos either. Aguilar stopped working for him in April 2024 and Rocha stopped working for him in February 2024. Castellanos did not tell Ramos that the employees stopped working for him.

After Rocha left Castellanos' employ, Castellanos hired Edney Ceballos to monitor company email, but Ceballos did not inform Castellanos about any email concerning a trial setting. Castellanos learned about the judgment from Rigney and was never aware of trial dates in the case. He did not tell Ramos to stop emailing the former employees. He testified that he did not see any messages from Rigney until after trial because he was out of town with his family that weekend and was not "answering it."

The parties stipulated that Alaniz would testify that he was not hired to try the case and was just appearing to argue the motion for continuance. The parties further stipulated that he was not present at the time the trial court called the case for trial. Rigney asserted that Alaniz did eventually appear at trial, but late.

This appeal followed after the motion for new trial was overruled by operation of law. *See* Tex. R. Civ. P. 329b(c).

## II.    ANALYSIS

Appellants raise five issues on appeal. The first two issues concern whether the trial court erred by entering a post-answer default judgment under *Craddock*. As these issues are dispositive of the appeal, we do not address appellants' other issues.

## A.    Preservation for Appeal

As a preliminary matter, Carrell argues appellants failed to preserve their arguments regarding lack of notice of the trial date. *See* Tex. R. App. P. 33.1(a). He asserts that (1) appellants' written motion for new trial did not discuss lack of notice as a ground of error and (2) they could not raise notice for the first time at the hearing because that was after the deadline for amending the motion under Texas Rules of Civil Procedure 321 and 329b. Carrell cites several cases which he claims support his arguments. *See*

8

*Aguirre v. Phillips Props., Inc.*, 111 S.W.3d 328, 332 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.); *Walker v. Gonzales Cnty. Sheriff's Dep't*, 35 S.W.3d 157, 160 (Tex. App.—Corpus Christi–Edinburg 2000, no pet.); *L.B. Foster Co. v. Glacier Energy, Inc.*, 714 S.W.2d 48 (Tex. App.—San Antonio 1986, no writ).

We disagree with Carrell's narrow interpretation of appellants' motion. While the original motion for new trial does not use the specific phrase "lack of notice," it does argue the *Craddock* factors and states Rigney had no time to prepare for trial or speak with his clients concerning the trial. Presenting evidence in support of the first *Craddock* factor at the hearing is not an amendment to appellants' motion as Carrell contends. *See* TEX. R. CIV. P. 321, 329(b). Further, none of Carrell's cited cases state that arguing lack of notice at the motion for new trial hearing in support of a *Craddock* argument without the specific facts in the motion fails to preserve the issue for appeal. As such, Carrell's argument lacks support and we reject it.

**B.      Standard of Review**

We review denial of a motion for new trial for abuse of discretion. *XL Ins. Co. of N.Y., Inc. v. Lucio*, 551 S.W.3d 894, 898 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.). This includes following a trial court's refusal to set aside a default judgment. *See id.* "A trial court abuses its discretion if it acts without reference to any guiding rules or principles or fails to correctly analyze or apply the law." *Id.*

**C.      *Craddock***

*Craddock* is the seminal case regarding setting aside default judgments, holding that a default judgment should be set aside if: (1) the failure to appear at a hearing was not intentional or the result of conscious indifference, but was a mistake or accident;

9

(2) there is a meritorious defense; and (3) a new trial will not result in delay or prejudice to the plaintiff. *Id.* (citing *Craddock*, 133 S.W.2d at 126 (noting that, while trial courts have broad discretion in deciding whether to set aside a default judgment and grant a new trial, that discretion is not "unbridled")). These elements apply to a post-answer default judgment as well. *Norimex Int'l Metals, Inc. v. Salinas*, No. 13-09-00074-CV, 2010 WL 18044968, at *2 (Tex. App.—Corpus Christi–Edinburg May 6, 2010, pet. denied) (mem. op.).

It is appellants' burden to prove each element of the *Craddock* test. *Milestone Operating, Inc. v. ExxonMobil Corp.*, 388 S.W.3d 307, 309 (Tex. 2012). But if all three elements are satisfied, "a trial court abuses its discretion if it fails to grant a new trial." *Estrada v. Boss Exotics, LLC*, 703 S.W.3d 454, 458 (Tex. App.—Dallas 2024, no pet.) (citing *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009) (per curiam)). However, in a post-answer default judgment, if the first element is proven by evidence that the party did not receive notice of the default judgment hearing, it is not required to prove the second and third *Craddock* elements. *Norimex Intern. Metals*, 2010 WL 18044968, at *2 (citing *Mathis v. Lockwood*, 166 S.W.3d 743, 744 (Tex. 2005) (per curiam) (further citations omitted)); *see Lopez v. Lopez*, 757 S.W.2d 721, 723 (Tex. 1988) (holding, where appellant "had no actual or constructive notice of the trial setting," that "the lower courts erred in requiring him to show that he had a meritorious defense as a condition to granting his motion for new trial" because "such a requirement, in the absence of notice, violates due process rights under the Fourteenth Amendment").

## D. Discussion

Texas law greatly disfavors default judgments due to the strong policy preference

for adjudicating cases on their merits. *Tabakman v. Tabakman*, 728 S.W.3d 703, 707 (Tex. 2025) (per curiam). "[O]ur law merely tolerates such judgments because defendants 'cannot defeat the authority of the courts simply by refusing to appear.'" *Id.* at 707–08 (quoting *In re Lakeside Resort JV, LLC*, 689 S.W.3d 916, 921 (Tex. 2024)). Thus, any doubts regarding the default judgment "must be resolved against the party who secured the default." *Id.* at 708 (quoting *In re Lakeside Resort JV*, 689 S.W.3d at 922).

The record reveals a concerning turn of events beginning with the trial court's granting of Ramos's motion to withdraw. The trial court's decision to allow Ramos to withdraw less than a week prior to trial heavily contributed to appellants' failure to appear at trial. If a trial court allows an attorney to voluntarily withdraw, Texas law requires the court to "give the party time to secure new counsel and time for the new counsel to investigate the case and prepare for trial." *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986). Failure to do so functions as denial of the right to counsel, which is reversible error. *Id.* While appellants do not directly challenge the trial court's grant of the motion to withdraw or denial of the motion for continuance on appeal, and thus we cannot reverse on these grounds, they do assert that failure to allow them to timely obtain new counsel contributed to the default judgment.

To that end, the first *Craddock* factor requires that appellants' failure to appear at trial was not the result of conscious indifference meaning that appellants "knew [they were] sued but did not care." *XL Ins. Co. of N.Y.*, 551 S.W.3d at 899. We look to the knowledge and acts of appellants to make this determination. *See id.* All that is required is some excuse, even if not a good one, regarding the failure to appear. *Id.* (citing *Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012)); *Norimex Int'l Metals*, 2010 WL

11

18044968, at *4. Further, "[a]s a matter of law, a post-answer default judgment is valid only if the defaulting party received notice of the trial setting at which judgment was rendered." *Norimex Int'l Metals*, 2010 WL 18044968, at *3. "Where the record establishes that a defaulting party had no actual notice of the default judgment hearing, the default judgment cannot be sustained." *Id.*

The facts of this matter closely align with the facts in our determination in *Norimex International Metals.* There, like here, the primary record evidence we have for notice "is their former counsel's vague testimony at the motion for new trial hearing that he mailed all notices to appellants' last known address." *Id.* at *3. Also, like that case, appellants testified that they never received notice of their former counsel's withdrawal or of the trial setting.[2] Ramos testified that he did not have any real communication with appellants and, like in *Norimex*, could not say whether "appellants actually received his 'notices.'" *See id.* Castellanos's testimony supports Ramos's contention. Carrell argues notice to Ramos automatically imputed notice to appellants, but that is not an automatic assumption in consideration of the *Craddock* factors or after withdrawal of counsel. *See Tactical Air Def. Servs., Inc. v. Searock*, 398 S.W.3d 341, 347 (Tex. App.—Dallas 2013, no pet.) (concluding, where attorney was notified of trial setting but withdrew before trial, that attorney's "knowledge of the trial setting cannot be imputed to his clients").

Continuing the parallels with the former case, here, Carrell primarily relies "on the fact that appellants' former counsel sent notices to appellants' last known address" and the fact that the withdrawal motion certifies that the trial date was set. *See Norimex*, 2010

---

[2] While Carrell objected to this testimony, the trial court did not rule on this objection, which does not preserve this issue on appeal. *See* TEX. R. APP. P. 33.1.

WL 1804968, at *4. Even ignoring the facial issues with the motion for withdrawal,[3] testimony indicated that appellants never received the motion because Ramos sent it to an email not checked by appellants' representative, and that it was not forwarded until after the default judgment was signed. Likewise, Castellanos testified he did not receive phone calls from Rigney the weekend before trial because he was on vacation and did not check his phone. While this is not a good excuse, it is some excuse, which is all that is required. *See id.* Castellanos also testified he was unaware Ramos withdrew as counsel.

> Admittedly, as is usually the case, appellants could have made better efforts to communicate with counsel. However, negligent conduct does not rise to the level of conscious indifference, and all that is required for the setting aside of a default judgment is a slight excuse for the party's failure to act. The foregoing, although not necessarily a good excuse, is nonetheless some excuse for appellants' failure to appear at trial.

---

[3] Texas Rule of Civil Procedure 10 requires motions to withdraw to be "for good cause" and has differing requirements depending on whether there will be substitute counsel. TEX. R. CIV. P. 10. While the record indicates that Rigney essentially stepped in as substitute counsel almost immediately and that Ramos communicated with him in some regard as to taking over representation, Ramos's motion does not refer to substitute counsel, and the hearing record makes no reference to this either.

Accordingly, Ramos's motion had to meet the requirements applicable when there is no substitute counsel, including stating: (1) a copy of the motion was delivered to the party; (2) the party was notified in writing of the right to object to the motion; (3) whether the party consents to the motion; (4) the party's last known address, telephone number, and email address; and (5) all pending settings and deadlines. While Ramos's motion provided good cause and met requirements one, two, and five, it failed to meet requirement three and only partially complied with requirement four. The motion fails to state whether appellants consented to the motion and fails to list an email address or telephone number for appellants.

The facts of this case elucidate why these requirements exist. It is apparent that Ramos had no real contact with his clients for a lengthy period and thus never obtained information from them on whether they consented to the motion. Given the short period between Ramos's withdrawal and the trial date, the need for appellants' consent was crucial as having entirely new counsel enter a case merely days before a trial is inherently problematic. Likewise, the lack of complete contact information for his clients and the record's indication that Ramos apparently had no direct access to his clients' representative is equally troublesome and revealing.

Therefore, the motion to withdraw is facially deficient and does not support Carrell's assertion that appellants had notice. *See Tactical Air Def. Servs.*, 398 S.W.3d at 347 (noting, where attorney was notified of trial setting but withdrew before trial, that the motion to withdraw's failure to comply with Rule 10 is "significant in the context of determining whether notice should be imputed to [his] former clients").

*Id.*

As for Rigney, the record indicates that he lacked authority to appear on behalf of appellants at the time he filed his notice of appearance and motion for continuance. It is foundational under Texas law that a lawyer has no authority to bind a client "in the absence of authority to do so." *McMillan v. McMillan*, 72 S.W.2d 611, 612 (Tex. App.—Dallas 1934, no writ). Regardless of whether his acts constituted conscious indifference, they cannot be imputed on appellants without appellants' express authority. Certainly, appellants could not provide authority to an attorney to appear on their behalf that they had not spoken to prior to the trial date. Moreover, Rigney's representation of appellants on other matters does not automatically confer authority in this case as Carrell argues.[4]

Carrell argues that appellants received notice in several ways. He claims that Ramos testified that he personally advised Castellanos about the trial date, but as his testimony at the motion for new trial hearing elaborated, he could not be sure that his communication reached Castellanos. Carrell also argues that because Rigney's motion for continuance references the trial date and makes no claim of confusion about the trial date, knowledge of the trial date is imputed on appellants. But as stated above, Rigney was acting without authority and had not even spoken with appellants when he filed the motion. *See id.* Thus, mere filing of this motion does not impute knowledge on appellants without further record evidence.

Carrell also argues that the trial court was entitled to credit Ramos's statement "in plain terms" that he notified appellants, over his clarification and over Castellanos's

---

[4] As such, any complaints regarding defects in Rigney's verification are irrelevant to resolution of this appeal.

14

testimony. It is true that a trial court does not abuse its discretion if its decision is based on some evidence of a substantive and probative character. *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding). The trial court is entitled to determine as to whether failure to appear is the result of conscious indifference or mistake. *See Price v. Firestone Tire & Rubber Co.*, 700 S.W.2d 730, 733 (Tex. App.—Dallas 1985, no writ). However, we do not agree that Ramos's statement can be characterized as telling "the judge in plain terms" that he directly informed Castellanos about the trial date, given Ramos's later clarification. With the final testimony on the record, there is no substantive evidence that Ramos definitively spoke with appellants about the trial date. Therefore, it was not within the trial court's discretion to deny the motion for new trial. *See In re Barber*, 982 S.W.2d at 366.

Accordingly, we sustain appellants' first three issues.

### III. CONCLUSION

We reverse the trial court's judgment and remand to the trial court with instructions to grant the motion for new trial and for further proceedings consistent with this memorandum opinion.

YSMAEL D. FONSECA
Justice

Delivered and filed on the
9th day of April, 2026.

15